617 S.E.2d 740

**Marty K. COLE and Tracy S. Cole, as co-administrators of the Estate of Kyle Austin Cole, and Tracy S. and Marty K. Cole, individually, Appellants,**

**v.**

**Pratibha P. RAUT, M.D., and Dr. Raut & Associates, P.A., Respondents.**

**No. 3995.**

Court of Appeals of South Carolina.

Heard Oct. 12, 2004.

Decided May 25, 2005.

Rehearing Denied Aug. 29, 2005.

Charles L. Henshaw, Jr., of Columbia, for Appellants.

438

Robert H. Hood, Roy P. Maybank, and Deborah Sheffield, all of Charleston, for Respondents.

HEARN, C.J.:

In this medical negligence action, Marty and Tracy Cole appeal from a verdict in favor of Dr. Pratibha P. Raut and her medical practice. The Coles argue the circuit court erred in charging the jury on assumption of risk. We agree, and reverse and remand for a new trial.

## FACTS/PROCEDURAL BACKGROUND

The day before delivering her son, Kyle, Tracy Cole ("Cole") was admitted to the hospital. Cole's obstetrician, Dr. Raut, recommended that she undergo a vaginal birth after Cesarean section ("VBAC"). Although a VBAC carried risks including the possibility that the uterine scar from Cole's previous C–Section could rupture during labor and deprive the baby of oxygen, this procedure was the recommended method of delivery at that time. Cole signed a consent form acknowledging the risks associated with the VBAC procedure. She consented to a vaginal delivery, induction with medication, augmentation with medication, and retained the option of delivering by C-section if necessary. The consent form specifically stated that Cole:

[R]ecognize[s] that during the course of the [procedure], unforeseen conditions may necessitate additional or different procedures or services than those set forth above and ... further authorize[s] and request[s] that the above named surgeon ... perform such procedures as are in his [sic] professional judgment, necessary and desirable.

The Coles admit that they "elected to face the risks of [VBAC]" and do not allege negligence in the doctor's choice of treatment to which they had consented. Rather, they complain that Raut's timing in ordering the C-section was a departure from the standard of care.

As part of the VBAC procedure, Raut induced Cole's labor on February 21, 1997. Despite the decision to proceed with the VBAC, Raut retained a surgical crew on-call in case an emergency C-section became necessary. Cole's labor progressed slowly. At approximately 1:30 a.m. the following day,

a fetal heart monitor indicated changes in the baby's heart rate. At approximately 2:00 a.m., changes in the baby's heart rate necessitated administration of oxygen to Cole and continued close observation of the baby's vital signs. At that time, Raut unsuccessfully attempted to notify the operating room personnel, who were engaged in another surgical procedure, to remain in the hospital. At 2:15 a.m., Cole began to complain of abdominal pains, indicating her uterine wall had ruptured and requiring an emergency C-section. At 2:20 a.m., Raut formally ordered that Cole undergo a C-section delivery. The surgical procedure began at 2:42 a.m., twenty-two minutes after the formal order. Kyle was born at 2:45 a.m. He suffered from brain damage and related problems including cerebral palsy, developmental delays, and a seizure disorder. Kyle died in August 2003 as a result of his conditions.

Both parties presented expert testimony. The Coles' expert testified that in this case, waiting until 2:20 a.m. to order a C-section was "not acceptable." He maintained that "early warning signs," including variables in the baby's heart rate, warranted that a C-section be ordered by 2:00 a.m. According to the Coles' expert, had Dr. Raut ordered the C-section by 2:00 a.m., the operating room staff should have been able to perform the surgery and deliver the child at the latest by 2:30. The Coles' expert testified that the baby would have been neurologically normal if he were delivered by "2:30 [a.m.] or 2:33 [a.m.] or 2:32 [a.m.]." The expert stated to a reasonable degree of medical certainty that "the doctor fell below reasonable standards of care when she failed to recognize the non-reassuring tracing [on the fetal heart monitor] at two o'clock and failed to set up for a possible emergency C-section."

Raut presented two expert witnesses who testified that she did not deviate from the appropriate standard of care with respect to the timing of the C-section. One expert testified that there were no signs mandating an emergency C-section until 2:20 a.m. at which time Raut recognized the problem "right away" and "immediately then called for a stat C-section."

During trial, Raut sought to amend her pleadings to include assumption of risk as an affirmative defense. The trial court reserved its ruling until the close of the evidence. At the

close of the case, the trial court charged the jury on the law of negligence and on assumption of risk. The Coles objected to the charge of assumption of risk. The jury returned a general verdict for Raut. The Coles then moved for a new trial on the grounds that Cole never assumed the risk of a delayed emergency C-section. The trial court denied the motion.

## SCOPE OF REVIEW

In reviewing a trial court's decision regarding jury instructions, an appellate court will not reverse absent an abuse of discretion. *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.* (citation omitted). The trial court is required to instruct the jury only on principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues. *Id.* at 390, 529 S.E.2d at 539.

## DISCUSSION

The Coles argue the trial judge committed reversible error by instructing the jury on assumption of risk. We agree.

"[I]t is reversible error to charge a correct principle of law as governing a case when such principle is inapplicable to the issues on trial." *Miller v. Schmid Labs., Inc.*, 307 S.C. 140, 142–43, 414 S.E.2d 126, 127 (1992) (quoting *Dunsil v. E.M. Jones Chevrolet Co.*, 268 S.C. 291, 295, 233 S.E.2d 101, 103 (1977)).

"In order for the doctrine of assumption of the risk to apply, the injured party must have freely and voluntarily exposed himself to a known danger which he understood and appreciated." *Faile v. Bycura*, 289 S.C. 398, 399, 346 S.E.2d 528, 529 (1986) (citation omitted). The specific requirements of the defense of assumption of risk are: "(1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger." *Davenport v. Cotton Hope Plantation*

*Horizontal Property Regime,* 333 S.C. 71, 79, 508 S.E.2d 565, 569 (1998) (citation omitted).

> The doctrine of assumption of risk involves an intelligent and deliberate choice between a course known to be dangerous and what is not dangerous. It involves the taking of a calculated risk. Assumption of risk is a matter of knowledge of a danger and the intelligent acquiescence in it. The doctrine is predicated on the factual situation of a defendant's acts alone creating the danger and causing the accident, with the plaintiff's act being that of voluntarily exposing himself to such an obvious danger with appreciation thereof which resulted in the injury.

*Senn v. Sun Printing Co.,* 295 S.C. 169, 173, 367 S.E.2d 456, 458 (Ct.App.1988).

■ In the present case, Cole signed a consent form acknowledging the risks associated with the VBAC procedure. The consent form suggests Cole freely and voluntarily exposed herself and her child to a known danger associated with the VBAC procedure, which she understood and appreciated. However, nothing in the record suggests Cole assumed the risk associated with a delayed C-section delivery of her child following her decision to undergo the VBAC. Cole had no knowledge of the danger posed by a delay between the warning signs and the time the C-section was commenced. Moreover, Cole had no knowledge of the circumstances surrounding the delay. Without this knowledge, Cole could not appreciate the nature and extent of the danger or voluntarily expose herself and her child to such a danger. As a result, the trial judge erred in charging the jury on assumption of risk.

■ "The giving of an erroneous instruction is not reversible error, unless the appellant can show that he was injured and prejudiced thereby." *Ellison v. Simmons,* 238 S.C. 364, 372, 120 S.E.2d 209, 213 (1961). In *Ellison,* the court found the trial judge erred in instructing the jury "that pecuniary loss will be presumed where the beneficiaries of the action for wrongful death are the widow and minor children of the decedent, when it is undisputed that all of the decedent's children are adults." *Id.* at 370, 120 S.E.2d 209, 212. However, the court found the error was not reversible because the

appellant failed to show the charge was prejudicial when pecuniary loss was undisputed at trial and the judge also charged the jury on the elements to consider in awarding damages. In so holding, the *Ellison* court distinguished two cases, *Wright v. Harris*, 228 S.C. 144, 89 S.E.2d 97 (1955) and *Citizens Bank of Darlington v. McDonald*, 202 S.C. 244, 24 S.E.2d 369 (1943).

In *Wright*, the court stated:

[I]t is reversible error to charge a correct principle of law as governing a case when such principle is inapplicable to the issues on trial. Conflicting and irrelevant instructions constitute reversible error[;] and a trial Judge ought to take care not to confuse the jury by charging them on legal principles which are inapplicable to the case on trial....

228 S.C. at 148, 89 S.E.2d at 98 (citations omitted). The *Wright* court held an erroneous charge on breach of contract accompanied by a fraudulent act to be reversible error where the causes of action were founded solely in fraud and deceit. The *Ellison* court analyzed the erroneous charge in *Wright*, stating "[i]t is readily apparent that such a charge was prejudicial to the appellant." 238 S.C. at 372, 120 S.E.2d at 213.

Similarly, in *Citizens Bank of Darlington*, the sole issue for trial was the genuineness of a payee's signature on a check. 202 S.C. at 250, 24 S.E.2d at 373. The court determined that the trial judge erred in instructing the jury on conflicting burdens of proof and erred in charging the jury on estoppel. The court held that it was reversible error for the judge to give conflicting instructions and to instruct on irrelevant issues. *Id.* at 255, 24 S.E.2d at 375; *See also Ellison*, 238 S.C. at 372, 120 S.E.2d at 213.

The principles enunciated in *Wright* and *Citizens Bank of Darlington* have been consistently applied by this court and the supreme court. *See Miller v. Schmid Labs., Inc.*, 307 S.C. 140, 142–43, 414 S.E.2d 126, 127 (1992) (finding reversible error to charge the correct definition of bilateral contract because the issue was irrelevant to whether an employee handbook could form the basis of a contract between an employer and employee); *White v. Fowler*, 276 S.C. 370, 372, 278 S.E.2d 777, 778 (1981) (stating that when the only reasonable inference from the evidence was that respondent's action-

able negligence caused the accident, a charge on unavoidable accident was irrelevant and prejudicial); *Dunsil v. E.M. Jones Chevrolet Co.*, 268 S.C. 291, 295, 233 S.E.2d 101, 103 (1977) (finding reversible error when "[t]he instructions by the court of irrelevant and inapplicable principles of law was clearly erroneous and may have been confusing to the jury"); *Brown v. Howell*, 284 S.C. 605, 610, 327 S.E.2d 659, 662 (Ct.App.1985) (concluding the trial judge's instruction on avoidable accident was prejudicial when the issue was abandoned at trial).

■ In the present case, the erroneous charge of assumption of risk was irrelevant and inapplicable to the Coles' allegations. The evidence demonstrates that while Cole may have assumed the risk for the VBAC procedure, she never assumed the risk for a delayed C–Section delivery, which was the basis of the Coles' causes of action. The assumption of risk charge had the potential to confuse the jury concerning the underlying factual basis of the Coles' claims and availed Raut with a defense that was not supported by the evidence. As a result, the Coles were prejudiced by the erroneous charge.

■ The Respondents argue that any prejudice occasioned by the erroneous charge is specifically defeated by the "two issue rule." In essence, the Respondents are asserting that the Coles have failed to demonstrate any prejudice because the jury returned a general defense verdict, and we have no way to discern if it decided in favor of Raut on the assumption of risk defense or against the Coles on their negligence claim. We disagree.

As explained above, the trial judge instructed the jury on an inapplicable defense to the Coles' medical negligence claims. Such an error likely confused the jury with respect to the relevant legal principles as well as the underlying facts of the causes of action subject to the inapplicable defense. Thus, because the Coles' negligence claims were adversely impacted by the erroneous charge, the Coles' prejudice is not defeated by the "two issue rule." The general defense verdict is not independently supported by the negligence cause of action, and the Coles have no other causes of action to support the general verdict. *See Ricks v. Jackson*, 169 Ohio St. 254, 159 N.E.2d 225, 227 (Oh.1959) (explaining the two issue rule is

used as a means of requiring an affirmative showing of prejudice in order to justify reversal, and finding that despite the two issue rule, an error in charging the jury on contributory negligence was prejudicial and reversible error).

Furthermore, we believe applying the "two issue rule" under the circumstances of this case presents an "unusual application" similar to the one that was soundly rejected in *Anderson v. South Carolina Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 419, 472 S.E.2d 253, 254 (1996). In *Anderson*, the trial judge submitted the issue of general negligence and the defense of contributory negligence to the jury. The jury returned a general verdict in favor of the defendant. After the verdict, the trial court belatedly granted plaintiff's motion for a directed verdict on the issue of negligence. The court noted that it had no way to tell whether the jury returned a verdict in favor of the defendant due to the plaintiff's failure to prove negligence or the defendant's success in proving contributory negligence. As a result, the trial court granted a new trial. The court of appeals reversed, "essentially [finding] the trial court erred by not applying the 'two issue' rule to uphold the jury's verdict." *Id.* at 421, 472 S.E.2d at 255. The supreme court declined to adopt "this unusual application of the 'two issue' rule" for the following three reasons: (1) the rule is utilized by courts on appeal, not trial courts, (2) the rule is a procedural tool for upholding, not reversing decisions, and (3) such an application would discourage trial courts from correcting errors. *Id.*

Like *Anderson*, applying the rule in this case could very well have the effect of discouraging trial courts from correcting errors. Here, the trial judge had an opportunity to correct the error by granting the Coles' motion for a new trial. He did not do so, ostensibly because he did not believe his earlier decision to charge assumption of risk was error. However, were we to accept Respondents' argument on the "two issue rule," a trial judge who realizes he or she has made an error during a trial could be inclined not to correct it and to uphold the verdict. Thus, we believe this application of the rule is proscribed by the supreme court's *Anderson* decision.

Furthermore, accepting the Respondents' argument to employ the "two issue rule" to affirm the verdict

despite an erroneous charge on the defense of assumption of risk would arguably place a heavy burden on trial lawyers to request a special verdict form in every case. Here, the Coles' attorney objected at *every* available opportunity, including post-trial, to what he perceived to be an erroneous charge. It was not necessary to also request a special verdict form in order to preserve this objection.[1]

## CONCLUSION

The trial judge erred in instructing the jury on the defense of assumption of risk, and the Coles were prejudiced by the erroneous jury instruction. As a result, the verdict is hereby reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

HUFF, J., concurs and KITTREDGE, J., dissents in a separate opinion.

KITTREDGE, J., dissenting:

I respectfully dissent. I would affirm the general defense verdict pursuant to the "two issue" rule.

In my judgment, this is a difficult case, for we are confronted with an apparent tension between the presumption of validity accorded a general verdict in multi-issue cases—and the concomitant viability of the "two issue" rule in South Carolina—and the principle that an erroneous *and prejudicial* jury instruction warrants reversal. At bottom, I believe the proper resolution of this appeal turns on the degree of prejudice necessary to merit reversal in the context of an erroneous jury instruction and a general verdict involving two or more

---

1. Although we do not believe a special verdict form was necessary to preserve the Coles' objection to the charge on assumption of risk, we note that Raut had already requested a special verdict form, which was specifically rejected by the trial judge. To say that the Coles needed to also request a special verdict form to protect their objection to the jury instruction would be to require an exercise in futility. This court does not require parties to engage in futile actions in order to protect their interests on appellate review. *See generally Staubes v. City of Folly Beach,* 339 S.C. 406, 415, 529 S.E.2d 543, 547 (2000); *Dunn v. Charleston Coca–Cola Bottling Co.,* 311 S.C. 43, 426 S.E.2d 756; *Carter v. Peace,* 229 S.C. 346, 93 S.E.2d 113 (1956).

issues. The majority, as I do, recognizes that the Appellants might have been prejudiced by the erroneous jury instruction. Where I part company with the majority is their attempt to syllogize from the "potential" for prejudice to an absolute, affirmative finding of prejudice. I characterize the claim of prejudice to the Appellants as nothing more than speculation. I adhere to the view that more is required to satisfy the prejudice prong. This view, I believe, more closely comports with the foundational principle of appellate procedure that "[a]n error not shown to be prejudicial does not constitute grounds for reversal." *Brown v. Pearson*, 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct.App.1997). Moreover, such a view maintains the efficacy and even-handed application of the "two issue" rule in this state.

## PROCEDURAL BACKGROUND

The trial court instructed the jury that Marty K. Cole and Tracy S. Cole were entitled to prevail if the jury found Dr. Pratibha P. Raut was negligent "in at least one or more of the ways alleged ... [and that] the defendants' negligence was the proximate cause of the plaintiff's injuries." At the conclusion of the charge on the assumption of risk affirmative defense,[2] the court stated:

> However, I charge you, on the other hand, if you find that the plaintiff's injuries and negligence were the result of the defendant's negligence, then in such circumstance your verdict would be for the plaintiff.

Dr. Raut urged the trial court to submit a special verdict form "with specific questions for the jury ... [including whether] plaintiff has proved [the negligence claim] by the greater weight or preponderance of the evidence." The trial court denied Dr. Raut's request for a special verdict form. The Coles did not request a special verdict form, although they were aware that assumption of risk would be charged.

The jury returned a general defense verdict.

---

2. The doctrine of assumption of risk was largely subsumed by the law of comparative negligence in *Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998). However, the cause of action in the present case arose in February 1997, prior to *Davenport*.

The Coles sought a new trial on the basis that assumption of risk was erroneously charged. The motion was denied, and judgment was entered for Dr. Raut and her medical practice. The Coles appeal only from the trial court's decision to charge the jury on the assumption of risk defense.

## DISCUSSION

While I agree with the majority that it was error to charge the jury on the defense of assumption of risk, I would find the general defense verdict is independently supported by the unchallenged submission of the negligence claim to the jury. This principle is generally referred to as the "two issue" rule.

The "two issue" rule—sometimes referred to as the "general verdict" rule—is based on the principle that reversal is inappropriate where no error is found as to one of the issues that may independently support the jury's verdict. South Carolina is among an apparent minority of states that has adopted the rule. South Carolina's first recognition of the rule, as best I can determine, came in 1926 in the case of *Hussmann Refrigerator Supply v. Cash & Carry Grocer, Inc.*, 134 S.C. 191, 132 S.E. 173 (1926). In *Hussmann*, the plaintiff filed an action in claim and delivery for possession of a refrigerator. The defendants answered with a general denial and a counterclaim. The jury rendered the following verdict: "We find for the plaintiff possession of the goods." *Id.* at 194, 132 S.E. at 173. The defendants moved for a new trial on "the ground that it did not appear from the verdict that the jury had passed upon [the counterclaim]." *Id.* The trial court granted the new trial motion. The supreme court reversed and reinstated the jury verdict. In so holding, the court relied on the principle that later became identified as the "two issue" rule:

> [W]hen there are several issues in the case submitted to a jury under full instructions, a general verdict in favor of one or the other of the parties, *in the absence of objection to the verdict not having passed upon the several issues separately*, will be held to have concluded all the issues.

*Id.* at 196, 132 S.E. at 174 (emphasis added).

The *Hussmann* court further noted that "[t]he defendants had no right to remain silent under the apprehension

that the irregularity might be corrected against their interest and afterwards complain of it." *Id.* at 194, 132 S.E. at 174.

The Nebraska Court of Appeals, I believe, properly describes the policy underpinnings of the "two issue" rule:
The general verdict rule provides that where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party, and, where a single determinative issue has been presented to the jury free from error, any error in presenting another issue will be disregarded ... On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. Therefore, unless an appellant can provide a record to indicate that the result of the trial was a result of the trial errors claimed on appeal, rather than from proper determination of the error-free issues, there is no reason to spend the judicial resources to provide a second trial.

*Lahm v. Burlington Northern R.R. Co.*, 6 Neb.App. 182, 571 N.W.2d 126, 131 (1997) (internal citations omitted).

One of the leading South Carolina cases dealing with the "two issue" rule—the case cited most frequently—is *Anderson v. West*, 270 S.C. 184, 188, 241 S.E.2d 551, 553 (1978) ("[W]here a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed."). We are confronted here with the submission to the jury of an error-free negligence claim and a challenged jury charge on the affirmative defense of assumption of risk.

I recognize the limited applications of the "two issue" rule, for the "rule may be applied by appellate courts in a few situations." *Anderson v. South Carolina Dep't of Hwys. and Pub. Transp.*, 322 S.C. 417, 420, 472 S.E.2d 253, 254 (1996). In *Anderson*, our supreme court addressed and rejected an "unusual application" of the "two issue" rule. *Id.* at 421, 472 S.E.2d at 255. Anderson was injured in a fall on a sidewalk,

and she sued the South Carolina Department of Highways and Public Transportation on a theory of negligence in maintaining the sidewalk. Anderson moved for a directed verdict as to liability, but the trial court deferred ruling on the motion. The case was submitted "to the jury on the issues of general negligence and contributory negligence, and the jury returned a general verdict for Highway Department." *Id.* at 419, 472 S.E.2d at 254. The trial court then granted Anderson's directed verdict motion, ruling as a matter of law that the Highway Department was negligent in its maintenance of the sidewalk. The trial court granted a new trial since it could not determine "whether the jury reached its verdict for Highway Department on the basis of Anderson's failure to prove improper maintenance, Anderson's failure to prove proximate cause, or Highway Departments success in proving contributory negligence." *Id.*

On appeal, this court reversed the granting of the new trial, finding the jury verdict should have been sustained under the "two issue" rule. *Anderson v. South Carolina Dep't of Hwys. and Pub. Transp.,* 317 S.C. 280, 282, 454 S.E.2d 353, 354–55 (Ct.App.1995). The supreme court granted certiorari and affirmed in result, but rejected the application of the "two issue" rule. *Anderson* provides a thoughtful analysis of the appropriate application of the "two issue" rule. Of particular note is the courts discussion of the three reasons for rejecting the "two issue" rule in that case:

> Initially, the rule is utilized by courts on appeal, not trial courts. Secondly, the rule is a procedural tool for upholding, not reversing, decisions. Thirdly, the practical effects of the Court of Appeals' application of the "two issue" rule are undesirable. Such an application would discourage trial courts from correcting errors. Because the jury's general verdict could potentially be upheld anytime it was susceptible of two or more constructions, there would be no incentive for trial courts to correct errors, such as through the direction of a post-trial verdict.

*Anderson v. South Carolina Dep't of Hwys. and Pub. Transp.,* 322 S.C. at 421, 472 S.E.2d at 255.

In my judgment, the reasons favoring application of the "two issue" rule predominate in the case before us. First, we

would be invoking the rule in the context of appellate review.[3] Next, we would be utilizing the rule to uphold the judgment below. And finally, application of the rule under these circumstances should not discourage trial courts from correcting errors.[4]

This court, subsequent to *Anderson,* applied the "two issue" rule in circumstances procedurally similar to those presently before us. In the case of *Bryant v. Waste Management, Inc.,* 342 S.C. 159, 536 S.E.2d 380 (Ct.App.2000), Bryant asserted six theories of negligence. The jury returned a general verdict for Bryant. The trial court denied the post-trial motions, from which Waste Management appealed. We agreed with Waste Management that "the trial court erred in instructing the jury that a violation of federal Occupational Safety Health Administrations ... regulations constitutes negligence per se." *Id.* at 166, 536 S.E.2d at 384. We nevertheless affirmed, and in relying on the "two issue" rule, we noted the speculative nature of Waste Managements prejudice argument:

Waste Management, however, has not shown it was prejudiced by [the erroneous jury instruction] because there existed other bases upon which the jury could find it liable

3. This factor—invoking the "two issue" rule only at the appellate level—illustrates the undesirable consequences of this court's short-lived holding in *Anderson.* This court in *Anderson* essentially *mandated* that a trial court apply the "two issue" rule to sustain a general verdict even if the trial court found error in its own rulings. This court's ruling in *Anderson* was nothing short of a direct intrusion on a trial court's ability to alter, amend or set aside a verdict or judgment. In the case before us, application of the "two issue" rule constitutes no such intrusion.

4. The majority advances the argument that the "two issue" rule will discourage trial courts from correcting errors. This argument is premised on the notion that the "trial judge had an opportunity to correct the error by granting the Coles' motion for a new trial ... [and][h]e did not do so, ostensibly because" he believed his ruling to be the correct one. I find nothing in the record to suggest that the trial court somehow realized its error. Absent evidence to the contrary, I believe we must assume that a trial judge makes a ruling because he or she believes the ruling is the correct one. The trial court in *Anderson,* for example, granted a new trial and did not seek cover behind the "two issue" rule. I believe our fine trial judges are entitled to the presumption that their rulings—even if determined to be in error-are the result of a well—intentioned desire to render correct rulings.

... Because the jury rendered a general verdict and could have relied upon any of these [other] allegations of negligence to find Waste Management liable and because there is ample evidence supporting at least one of these [other] allegations ... we cannot say Waste Management was prejudiced by the jury charge in issue.

*Id.* at 167–68, 536 S.E.2d at 384–85.

*Bryant* is merely one case among many holding that an erroneous jury instruction, absent a showing of resulting prejudice, will not warrant reversal. *See Sierra v. Skelton*, 307 S.C. 217, 225, 414 S.E.2d 169, 174 (Ct.App.1992) (affirming general verdict under "two issue" rule, noting that rule applies to "a situation where ... the trial court erred in the jury instructions"); *Piedmont Aviation, Inc. v. Quinn*, 294 S.C. 502, 505, 366 S.E.2d 31, 32–33 (Ct.App.1988) (holding where case is submitted to jury on two causes of action and jury returns a general verdict, error by trial court in its instructions on second theory is of no consequence where verdict is supportable under first theory).

I now turn to a related principle—"it is reversible error to charge a correct principle of law as governing a case where such principle is inapplicable to the issue on trial." *Ellison v. Simmons*, 238 S.C. 364, 372, 120 S.E.2d 209, 213 (1961). This seems to me the strongest argument of the Coles to receive a new trial. However, this general principle is applied where "[i]t is readily apparent that such a charge was prejudicial to the appellant." *Id.* Perhaps the Coles were prejudiced by the giving of the assumption of risk charge. Neither the majority nor I know for sure.[5] We certainly cannot say it is "readily apparent" the challenged charge was the basis of the jury verdict. This uncertainty brings me back to the "two issue" rule.

---

5. The uncertainty concerning prejudice is, in my judgment, the critical feature in the proper resolution of this appeal. The majority and I agree that the Coles might have been prejudiced. As stated at the outset, I part company with the majority in their leap from the "potential" for prejudice to an absolute, affirmative finding of prejudice. The bottom line is that we do not know whether the Coles were prejudiced by the erroneous jury instruction. If the possibility of prejudice arising from an erroneous jury instruction is sufficient to warrant reversal, the majority reaches the correct result.

The touchstone of the "two issue" rule is its concern with prejudice. As noted, an appellant must show not only error, but also prejudicial error, to secure reversal of an adverse judgment. The prejudice prong, in the context of the "two issue" rule, is generally established by the mere request at trial for an appropriate special verdict form. *See Hussmann,* 134 S.C. at 196, 132 S.E. at 174 (noting "the absence of objection to the verdict not having passed upon the several issues separately"); *Smoak v. Liebherr–America, Inc.,* 281 S.C. 420, 421, 315 S.E.2d 116, 118 (1984) (upholding denial of post-trial motion, and affirming general verdict under "two issue" rule with court noting that "the record indicates the trial judge asked the respective attorneys for assistance in constructing a special verdict form to submit to the jury, but received none"). Here, the Coles leave to conjecture the claim of prejudice. After the trial court announced its decision to charge assumption of risk, the Coles voiced no complaint with the general verdict form, and remained silent when Dr. Raut was requesting a special verdict form.[6] I would find that the Coles have failed to establish the critical prejudice prong.

The Coles and the majority cite *Ricks v. Jackson,* 169 Ohio St. 254, 159 N.E.2d 225 (1959) for the proposition that prejudice is presumed and the "two issue" rule does not apply when there was a charge on an issue upon which the jury should not have been charged. The Ohio Supreme Court has since retreated from a strict application of the holding in *Ricks.* That court has since twice applied the "two issue" rule to uphold general verdicts where appellants failed to establish prejudice in connection with erroneous jury instructions.

---

**6.** The Coles, to their credit, make no attempt to bootstrap Dr. Raut's request for a special verdict form to their advantage. *See Tupper v. Dorchester County,* 326 S.C. 318, 324, 487 S.E.2d 187, 190 (1997) (stating an appellant may not preserve an issue for appeal by way of another party's objection or challenge). The majority seeks to avoid this principle—and give the Coles a pass—on the basis that a similar motion by the Coles would have been "an exercise in futility." We do not know what the trial court would have done if the Coles had also requested a special verdict form. Perhaps a request for a special verdict form from *both* parties would have swayed the trial court to grant the requests. That, of course, is speculation, but I submit it is equally as valid as the majority's guesswork. My preference is to avoid speculation and apply the rule that one party may not bootstrap or benefit from another party's objection or challenge.

*Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 729 N.E.2d 726, 739 (2000) (applying "two issue" rule to affirm general verdict and noting that *Ricks* does not set forth a rule of mandatory reversal where a charge is erroneously given); *Wagner v. Roche Labs.*, 85 Ohio St.3d 457, 709 N.E.2d 162, 166 (1999) (applying "two issue" rule to uphold a general verdict and finding an insufficient showing of prejudice, noting that the defendant "failed to request interrogatories that might have explained the jury's general verdict").

A general verdict is presumptively valid. *See Gold Kist, Inc. v. Citizens Southern Natl. Bank of South Carolina*, 286 S.C. 272, 282, 333 S.E.2d 67, 73 (Ct.App.1985) ("The appellate courts of this State exercise every reasonable presumption in favor of the validity of a general verdict."). The Coles concede the negligence claim involved disputed issues of fact and was properly submitted to the jury. The general defense verdict may therefore be sustained on the negligence claim, notwithstanding the erroneous assumption of risk instruction.

I do agree with the majority that application of the "two issue" rule places a burden on trial lawyers. I would go further by acknowledging that most of the issue preservation rules are burdensome on trial practitioners. Those rules, however, are designed to encourage precision and clarity of issues. I do not view the burden here as onerous. The request for a special verdict form is not uncommon in our state's trial courts, as Dr. Raut's request illustrates. And finally, with the majority's concern for the burden of requesting a special verdict form, we have introduced a new consideration. The "two issue" rule has served plaintiffs quite well in sustaining general verdicts without the slightest concern for the burden on defendants to request special verdict forms. I believe the "two issue" rule sustains the general defense verdict here.

## CONCLUSION

In sum, I accord the general verdict here a presumption of validity and find this appeal presents a proper application of the "two issue" rule. The inability of the Coles to establish prejudice resulting from the erroneous jury instruction is the cornerstone of my view of the case. Since I believe the

454

general defense verdict may be sustained on the negligence cause of action, I would affirm.

## ORDER GRANTING PETITION FOR REHEARING

### PER CURIAM.

After careful consideration of the Petition for Rehearing, this Court grants the Rehearing, dispenses with oral argument and files the attached opinion.

/s/ Kaye G. Hearn, C.J.,

/s/ Thomas E. Huff, J.

KITTREDGE, J.:

I would deny the Petition for Rehearing and issue a substitute opinion amending reference to the Court of Appeals decision in *Anderson v. South Carolina Department of Highways and Public Transportation*, 317 S.C. 280, 454 S.E.2d 353(Ct.App.1995)