663 S.E.2d 30

Marty K. COLE and Tracy S. Cole, as co-administrators of
the Estate of Kyle Austin Cole, and Tracy S. and
Marty K. Cole, individually, Respondents,

v.

Pratibha P. RAUT, M.D., and Dr. Raut
& Associates, P.A., Petitioners.

No. 26503.

Supreme Court of South Carolina.

Heard Feb. 21, 2008.

Decided June 9, 2008.

Rehearing Denied July 23, 2008.

Robert H. Hood, Robert H. Hood, Jr., and Deborah Harrison Sheffield, of counsel, all of Hood Law Firm, of Charleston, for Petitioners.

Charles L. Henshaw, Jr., of Furr, Henshaw & Ohanesian, of Columbia, for Respondents.

Chief Justice TOAL.

In this medical negligence case, the court of appeals reversed the trial court's general verdict in favor of Petitioner doctor, holding that the trial court erred in instructing the jury on the defense of assumption of the risk. This Court granted certiorari to review the decision of the court of appeals. We reverse the decision of the court of appeals and reinstate the general jury verdict for Petitioner.

### FACTUAL/PROCEDURAL BACKGROUND

Before delivering her son in February 1997, Respondent Marty Cole ("Cole") discussed the various delivery options with her obstetrician, Petitioner Dr. Pratibha Raut ("Dr. Raut"). Cole had previously delivered a baby by caesarian section (or C-section), but Dr. Raut recommended that Cole undergo a "vaginal birth after caesarian section," known as a VBAC. At the time, VBAC was the recommended method of delivery despite the risk that the uterine scar from Cole's previous C-section could rupture and cause the baby to suffer harm from oxygen deprivation.

Dr. Raut discussed the risks of a VBAC delivery with Cole and her husband during a prenatal visit two days before giving birth, and the next day, Cole informed Dr. Raut that she

wanted to attempt a VBAC. Because she was two weeks past her due date, Dr. Raut scheduled Cole to have labor induced the following day at Chester Memorial Hospital. When Cole reported to the hospital the following day, the nurse obtained Cole's written informed consent before beginning the labor and delivery process. The consent form documented Cole's consent to a VBAC delivery, induction of labor through medication, and augmentation of labor with medication, and also indicated Cole's authorization to delivery by C-section if necessary. Specifically, the form provided:

I recognize that during the course of the operation, unforeseen conditions may necessitate additional or different procedures or services that [sic] those set forth above and I further authorize and request that the above named surgeon ... perform such procedures as are, in his professional judgment, necessary and desirable.

Dr. Raut induced labor at 8:00 a.m. intending to deliver Cole's baby by VBAC, yet retaining a surgical crew on-call in case an emergency C-section became necessary.[1] Labor progressed slowly and at 1:30 the following morning, the fetal heart monitor began indicating changes in the baby's heart rate. These changes did not appear abnormal to the nursing staff. However, by 2:00 a.m., further changes in the baby's heart rate prompted nurses to administer oxygen to Cole and to summon Dr. Raut, who was already present at the hospital, to the delivery room. When she viewed the baby's heart rate monitor, Dr. Raut became concerned and attempted to notify the on-call surgical crew, which had already been summoned to the hospital to attend to another emergency, that it needed to remain there. Because the on-call crew was still operating on the emergency patient, Dr. Raut's initial call to the operating room went unanswered, and it was not until 2:10 a.m. that the operating room received formal standby notice.

At 2:15 a.m., Cole began to complain of abdominal pains, indicating that her uterine wall had ruptured, and at 2:20 a.m.,

---

1. At the time of Kyle's birth, Chester Memorial Hospital contained two operating rooms with in-house surgery crews available daily to perform scheduled procedures during set hours of operation. Outside of the regular hours of operation, a single standby surgical crew remained available on an on-call basis in the event that a surgical emergency arose during this time.

Dr. Raut formally ordered an emergency C-section for Cole. The C-section began at 2:42 a.m. and son Kyle was born at 2:45 a.m. Kyle suffered from brain damage and related problems, including cerebral palsy, developmental delays, and a seizure disorder. As a result of these conditions, Kyle died in August 2003.

The Coles brought a medical negligence action in their individual capacities and on behalf of Kyle against Dr. Raut and her medical practice. The Coles alleged that Dr. Raut's delay in ordering the emergency C-section and failure to deliver Kyle in a timely manner by C-section resulted in fetal oxygen deprivation causing Kyle's various medical conditions and his ultimate death. At trial, expert witnesses for the Coles testified that Dr. Raut was negligent in failing to order a C-section at 2:00 a.m. when the heart rate monitor first indicated troublesome variables in Kyle's heart rate. The Coles' expert obstetrician further testified that in accordance with American College of Obstetrics and Gynecology standards, the surgical team should have been able to deliver Kyle in this manner by 2:30 a.m. at the latest, and that in his opinion, delivery by no later than 2:33 a.m. would have resulted in a neurologically healthy baby. This testimony differed slightly from that of the Coles' expert witness on neonatalogy who opined that permanent brain damage had almost certainly occurred by 2:30 a.m. Conversely, expert witnesses for the defense testified that Dr. Raut did not deviate from the standard of care with respect to ordering Kyle's delivery by C-section because there was nothing to indicate an emergency until 2:20 a.m., at which time Dr. Raut promptly ordered the C-section. The defense also emphasized that the hospital had only one operating crew available at this hour, and that this crew was performing an emergency procedure on another patient when Dr. Raut first expressed concern.

At the close of evidence, the trial court granted Dr. Raut's earlier motion to amend her pleadings to include assumption of the risk as an affirmative defense, but denied the doctor's request for a special verdict form. The trial court instructed the jury on the law of negligence followed by a charge on the doctrine of assumption of the risk, and the jury returned a general verdict in favor of Dr. Raut. The Coles moved for a new trial on the grounds that the court erroneously charged

the jury on the doctrine of assumption of the risk because Cole had not assumed the risk of a delayed C-section. The trial court denied the Coles' motion and the Coles appealed.

The court of appeals initially affirmed the trial court's judgment in favor of Dr. Raut based on the application of the two-issue rule. After the Coles' petitioned for rehearing, the court of appeals reversed the case and remanded, finding that that the trial court's erroneous charge on assumption of the risk prejudiced the Coles and that the two-issue rule did not apply to uphold the jury verdict. *Cole v. Raut*, 365 S.C. 434, 617 S.E.2d 740 (Ct.App.2005). This Court granted certiorari, and Dr. Raut raises the following issue for review:

Did the court of appeals err in finding that the trial court's jury instructions on the defense of assumption of the risk constituted reversible error?

### STANDARD OF REVIEW

An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court committed an abuse of discretion. *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence. *Id.*

### LAW/ANALYSIS

Dr. Raut argues that the court of appeals erred in finding that the trial court's jury instructions on the defense of assumption of the risk constituted reversible error, and we agree.

As a primary matter, we find that the court of appeals correctly held that the trial court erred in charging the jury on assumption of the risk. A jury charge consisting of irrelevant and inapplicable principles may confuse the jury and constitutes reversible error where the jurys confusion affects the outcome of the trial. *State v. Washington*, 338 S.C. 392, 400, 526 S.E.2d 709, 713 (2000). In order for the doctrine of assumption of the risk to apply in a particular case, the injured party must have freely and voluntarily exposed him-

self to a known danger which he understood and appreciated.[2] *Faile v. Bycura*, 289 S.C. 398, 399, 346 S.E.2d 528, 529 (1986).

In this case the assumption of the risk charge was improper because even if Cole assumed the risk with respect to the VBAC procedure by signing the consent form, Cole did not simultaneously assume the risk of any danger specifically associated with a delayed C-section delivery, which is the basis for the Coles' medical negligence claim. The court of appeals found, and we agree, that the record does not indicate that Cole recognized any danger posed by a delay between the doctor's observation of the warning signs indicating the need for a C-section delivery and actual commencement of a C-section delivery. Furthermore, Cole was not aware of the possible circumstances under which such a delay might occur. Accordingly, Cole could not understand and appreciate the nature and extent of the danger of a delay. Therefore, the court of appeals correctly found that the trial court erred in charging assumption of the risk.

 An erroneous jury instruction, however, is not grounds for reversal unless the appellant can show prejudice from the erroneous instruction. *Ellison v. Simmons*, 238 S.C. 364, 372, 120 S.E.2d 209, 213 (1961). From this premise, the majority writing for the court of appeals found that the jury charge on assumption of the risk constituted reversible error because the charge "had the potential to confuse the jury concerning the underlying factual basis of the Coles' claims and availed Raut with a defense that was not supported by the evidence." *Cole*, 365 S.C. at 443, 617 S.E.2d at 744. We disagree with this conclusion.

An examination of the jury charges is instructive in this matter. After giving the charge on negligence and the doctrine of assumption of the risk, the trial court concluded with the following explanation:

---

2. This Court effectively abolished the affirmative defense of assumption of the risk in *Davenport v. Cotton Hope Plantation*, holding that the doctrine had been largely subsumed by the law of comparative negligence. 333 S.C. 71, 88, 508 S.E.2d 565, 574 (1998). However, the cause of action in the instant case arose prior to Davenport and the validity of the defense in that regard is not challenged on appeal.

I charge you, if you find that the plaintiff freely and voluntarily exposed herself to a known danger and understood and appreciated the danger, then in such circumstance your verdict would be for the defendant. However, I charge you, on the other hand, if you find that the plaintiff's injuries and negligence were the result of the defendant's negligence, then in such circumstance, your verdict would be for the plaintiff.

Considering the entire jury charge in light of the evidence and issues presented at trial, we conclude that the erroneous charge on assumption of the risk was not prejudicial to the Coles. In this matter, the parties set forth two very clear and very distinct theories of the case: the Coles argued that Dr. Raut was negligent in failing to order the C-section by 2:00 a.m., while Dr. Raut maintained that her actions were not negligent and that under the particular hospital conditions, she did everything in her power to timely deliver a healthy baby. Therefore, although erroneous, we believe that the assumption of the risk charge had little effect on the jury's consideration of the evidence presented under either party's theory of the case.

Furthermore, the trial court clarified any potential confusion resulting from the erroneous charge by definitively establishing that the jury should find for the Coles if Kyle's injuries resulted from Dr. Raut's negligence. *See Proctor v. Dep't of Health and Envt'l Control,* 368 S.C. 279, 319, 628 S.E.2d 496, 518 (Ct.App.2006) ("If the [jury] charge is reasonably free from error, isolated portions which might be misleading do not constitute reversible error."). It would be far too speculative on the part of this Court to find prejudicial error given the evidence presented at trial on the apparent insufficiency of available staff and facilities in this small hospital at this early hour, as well as testimony from medical experts explaining that Dr. Raut was not negligent in ordering Cole's C-section when she did. Accordingly, without a more specific argument showing how the Coles were prejudiced, we hold that the erroneous charge on assumption of the risk does not amount to reversible error.

We turn next to the court of appeals' analysis of the two-issue rule. Under the two-issue rule, when a jury returns

a general verdict in a case involving two or more issues or defenses, and the verdict is supported as to at least one issue or defense that has been presented to the jury free from error, the verdict will not be reversed. *Gold Kist, Inc. v. C & S Nat'l Bank,* 286 S.C. 272, 282, 333 S.E.2d 67, 73 (Ct.App. 1985). The application of the two-issue rule is separate and distinct from a prejudicial error inquiry, and operates to uphold a jury verdict that is sustained by the facts of the case. The rule is consistent with the established notion that the appellate courts in this State "exercise every reasonable presumption in favor of the validity of a general verdict." *Id.* at 282, 333 S.E.2d at 73.

In this case, applying the two-issue rule in a secondary analysis creates additional sustaining grounds for our holding that the trial court's charge on assumption of the risk is not reversible error. Here, the jury rendered a general defense verdict after hearing a properly submitted negligence claim and an erroneous charge on assumption of the risk.[3] As described in the prejudice analysis above, we find there was ample evidence at trial from which a jury could have concluded that Dr. Raut was not negligent in rendering medical assistance during Cole's labor and delivery. Accordingly, the general verdict for Dr. Raut may be sustained because it is independently supported by the negligence claim which was properly submitted to the jury. *See also Dropkin v. Beachwalk Villas Condominium Assn.,* 373 S.C. 360, 644 S.E.2d 808 (Ct.App.2007) (affirming a general defense verdict under the two-issue rule where plaintiff alleged error in the trial court's denial of a directed verdict on the issue of negligence, but where the record contained evidence supporting a defense verdict on the issue of proximate cause); *Bryant v. Waste Management, Inc.,* 342 S.C. 159, 536 S.E.2d 380 (Ct.App.2000) (applying the two-issue rule to determine that an erroneous instruction on negligence per se was not prejudicial to the defendant where there existed other theories of liability supported by ample evidence in the record upon which the jury could have based its verdict for the plaintiff); *Sierra v. Skelton,* 307 S.C. 217, 414 S.E.2d 169 (Ct.App.1991) (applying the two-issue rule to affirm a general jury verdict for the

---

3. Neither party disputes that the negligence claim was properly submitted to the jury.

plaintiff where the trial court erred in submitting the issue of abuse of process to the jury but the defendant alleged no error in submitting the plaintiff's remaining claim to the jury).

Additionally, we find that the court of appeals misinterpreted this Court's opinion in *Anderson v. S.C. Dept. of Highways & Public Transportation,* 322 S.C. 417, 472 S.E.2d 253, 254 (1996), in rejecting the applicability of the two-issue rule in the instant case. In *Anderson,* the plaintiff sued the South Carolina Department of Transportation (SCDOT) alleging negligent maintenance of a sidewalk on which she fell and injured herself. *Id.* at 419, 472 S.E.2d at 254. The plaintiff moved for a directed verdict as to liability, but the trial court deferred ruling on the motion and submitted the case to the jury on the issues of general negligence and contributory negligence. *Id.* After the jury returned a general verdict for SCDOT, the trial court granted the plaintiff's motion for a directed verdict on the issue of negligent maintenance of the sidewalk, and subsequently granted a new trial on the basis that it was impossible to determine whether the jury reached its verdict based on the plaintiff's failure to prove improper maintenance, the plaintiff's failure to prove proximate cause, or SCDOT's success in proving contributory negligence. *Id.*

On appeal, the court of appeals reversed the trial court's grant of a new trial on the grounds that the trial court should have sustained the jury's verdict pursuant to the two-issue rule. This Court granted certiorari and affirmed in result, but declined to adopt the court of appeals' "unusual application" of the two-issue rule. *Id.* at 421, 472 S.E.2d at 255. The Court reasoned that first, the two-issue rule is utilized by appellate courts, and not trial courts; second, the rule is a procedural tool for upholding, not reversing decisions; and third, the practical effects of the court of appeals' analysis—which essentially required a trial court to invoke the two-issue rule whenever necessary to uphold a jury's verdict—would discourage trial courts from correcting errors at the trial level. *Id.* Accordingly, the Court rejected the court of appeals' application of the two-issue rule to the facts of Anderson.

The facts of the instant case do not implicate the limitations of the two-issue rule articulated by the Court in *Anderson.* First, in the instant case, this Court is examining the applica-

tion of the two-issue rule in the context of appellate review. Next, the Court is applying the rule in this case to uphold the judgment of the trial court. Finally, application of the rule in the context of this case does not discourage trial courts from correcting errors, but rather, functions in the exact capacity for which the rule was intended. For these reasons, applying the two-issue rule to the erroneous jury charge in the instant case would not be "unusual." Conforming to the court of appeals' analysis of *Anderson* in the decision below, in our view, would effectively abolish the two-issue rule in South Carolina.

Furthermore, nothing in this Court's jurisprudence suggests, as the dissent would, excluding cases presented on a single theory of liability and a single affirmative defense from the ambit of the two-issue rule. To the contrary, in what appears to be the very first case in this State to set forth the basic tenets of the two-issue rule, this Court observed that "a general finding for the plaintiff is sufficient to dispose of the issues both on the petition and on the [defendant's] counterclaim." *Hussmann Refrigerator & Supply Co. v. Cash & Carry Grocer, Inc.*, 134 S.C. 191, 196, 132 S.E. 173, 174 (1926). *See also Anderson v. West*, 270 S.C. 184, 188, 241 S.E.2d 551, 553 (1978) ("[W]here a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed."). Accordingly, and because we find that any error in charging assumption of the risk was not prejudicial to the Coles in the first instance, we decline to place further limitations on the scope of the two-issue rule in our decision today.

Therefore, the general jury verdict for the defense may be affirmed because the jury charge on assumption of the risk did not amount to prejudicial error, or in the alternative, pursuant to the two-issue rule.

### CONCLUSION

For the foregoing reasons, we reverse the court of appeals and reinstitute the trial court's judgment in favor of Dr. Raut.

MOORE, WALLER, JJ., and Acting Justice APHRODITE K. KONDUROS, concur. PLEICONES, J dissenting in a separate opinion.

410

Justice PLEICONES.

I respectfully dissent, and would hold that the erroneous assumption of the risk charge prejudiced the Coles, and therefore would affirm the decision of the Court of Appeals. Moreover, as explained below, in my view the majority's discussion of the "two issue rule" is fundamentally flawed.

I agree with the majority of this Court that the trial judge erred in charging the jury on the defense of assumption of the risk. In my view, the Coles were prejudiced by this charge which instructed the jury that it must return a defense verdict if it found "the plaintiff freely and voluntarily exposed herself to a known danger and understood and appreciated the danger" in light of the two "informed consent" forms which were introduced into evidence. In my opinion, we need not engage in speculation and evidence weighing to determine this charge constituted reversible error.

I am also concerned because the opinion invokes the two issue rule to affirm this appeal despite the rule's inapplicability. The two issue rule holds that where a lower court's general verdict rests on two independent grounds, only one of which is challenged on appeal, the appellate court will affirm. The rule is simply one expression of the fundamental appellate philosophy of our courts: to affirm the decision of the lower court if possible. It also serves a second appellate goal, that is, to conserve scarce appellate resources by allowing courts to forgo analyzing "pointless ... exceptions" which cannot alter the outcome. *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 177 S.E.2d 544 (1970). These policies are reflected in situations other than challenges to a general verdict. *See e.g. Brading v. County of Georgetown*, 327 S.C. 107, 490 S.E.2d 4 (1997)(failure to argue all grounds for ruling below requires affirmance); *Buckner, supra* (same); *S.C. Prop. and Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 548 S.E.2d 880 (Ct.App. 2001)(same).

I agree with the majority that the two issue rule is properly applied where a general verdict for the plaintiff rests on more than one theory of liability, not all of which are challenged on appeal, or where a defense verdict rests on multiple theories,

at least one of which is not challenged.[4] Here, we have a defense verdict, but only one liability theory and one defense. As I understand the majority opinion, it is applying the two issue rule to preclude appellate review of a defense verdict where the "two issues" are the defendant's challenge to the plaintiff's proof, and an (admittedly inapplicable) affirmative defense. This new rule would mean, for example, that in an automobile wreck case where the plaintiff testified the light was green and the defendant testified the light was red, neither party could appeal the charging of inapposite liability theories or defenses following a general jury verdict because a "general verdict for [either party] may be sustained because it is independently supported by the negligence claim which was properly submitted to the jury." I cannot join in the creation of this new rule.

The two issue rule has no application, in my view, where as here there is one liability theory (negligence) and the defense theories are "not proven" and "assumption of the risk." That the jury may have returned a defense verdict upon a finding that Dr. Raut was not negligent rather than on the erroneous assumption of the risk defense should not affect the Coles' right to an appeal and a reversal. Since the appellate court has no basis upon which to determine whether the defense verdict rests on the jury's decision that the Coles failed in their proof or upon a finding that Mrs. Cole assumed the risk, in my view, the Coles have demonstrated the requisite prejudice entitling them to a new trial. The majority, I fear, has unwittingly resurrected the same perversion of the "two issue rule" that it soundly rejected in *Anderson v. S.C. Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 421, 472 S.E.2d 253, 255 (1996)(rejecting Court of Appeals' misapplication of the

---

4. Unlike the majority, I do not read *Hussmann Refrigerator & Supply Co. v. Cash & Carry Grocer, Inc.*, 134 S.C. 191, 132 S.E. 173 (1926) as involving the application of the two issue rule, but rather as holding that where a party interposes no timely objection, a general verdict for the other party disposes of all claims and counterclaims. *Hussmann* is not a case where a party failed to challenge on appeal all the grounds upon which the jury's verdict might rest, but rather one where a party's failure at trial to timely object to the form of the verdict precluded further relief. *Anderson v. West*, 270 S.C. 184, 241 S.E.2d 551 (1978), also cited by the majority, actually supports my view that the rule is properly invoked only where the appellant fails to challenge all the theories upon which the jury verdict might rest.

412

two issue rule, in part "because [if] the jury's general verdict could potentially be upheld anytime it was susceptible of two or more constructions, there would be no incentive for trial courts to correct such errors. . . .").

Since I believe the Coles established the requisite prejudice from the improper assumption of the risk and since the "two issue rule" does not apply, I would affirm the decision of the Court of Appeals reversing and remanding the matter for a new trial.