536 S.E.2d 380

Terrance BRYANT, Respondent,

v.

WASTE MANAGEMENT, INC., Appellant.

No. 3189.

Court of Appeals of South Carolina.

Heard May 10, 2000.

Decided June 12, 2000.

Rehearing Denied Oct. 7, 2000.

160

Joel W. Collins, Jr. and Gray T. Culbreath, both of Collins & Lacy, of Columbia, for appellant.

David A. Fedor and David E. Massey, both of Fedor, Massey, Whitlark & Ballou, of Columbia, for respondent.

GOOLSBY, Judge:

In this negligence action, a jury awarded Terrance Bryant $1.75 million in damages against Waste Management, Inc., for an accident resulting in partial amputation of his right foot. Waste Management appeals. We affirm.

## FACTS

On July 1, 1994, the City of Columbia Metro Waste Water Treatment Plant (MWWTP) contracted with Chambers Waste Systems of South Carolina, Inc. (Chambers) to haul away grit from waste water and non-degradable solid waste for disposal. The grit and other waste was removed at the plant and deposited into twenty-cubic-yard waste containers supplied by Chambers. When it rained, water would seep into these containers. Because the water was known to leak out after the containers were loaded for hauling, causing potential highway safety problems, Chambers instructed its haulers not to accept containers in which rainwater had accumulated. Instead, MWWTP would dispatch a plant employee to dig a trench in the grit waste and drain the water before hauling.

On the morning of August 14, 1996, Anthony Adams, a driver employed by Chambers, arrived at the plant to pick up and haul a container of grit to the landfill. Adams noticed excess water in the container and walked to the maintenance shop to find someone who could drain it. When he returned to the site where the container was, Adams discovered that the water was still there. He lifted one end of the container about one and a half feet onto his truck to facilitate drainage. Because MWWTP plant employees were responsible for draining such water, Terrence Bryant, a lead operator who had worked at MWWTP for several years, was called to the scene.

Bryant arrived with a shovel and began digging a trench in the grit. As he spoke with Adams, the eleven-ton container slipped off the truck and partially crushed Bryant's left foot. Despite emergency efforts, the front half of his foot was later amputated. As a result, Bryant was hospitalized for several days and missed over eighteen weeks of work. He now has impairment ratings of sixteen per cent to the person, forty per cent to the lower extremity, and fifty-seven per cent to the left foot.

On February 14, 1997, Bryant commenced this action for negligence against Chambers and Adams, among others.[1] On September 28, 1998, Bryant filed a motion to amend and designate Waste Management as the real party in interest. The trial court heard and granted the motion on the first day of trial, October 12. As a result, the court dismissed Chambers and substituted Waste Management as the party defendant. Adams was dismissed later during trial. On October 16, the jury returned a verdict for Bryant in the amount of $750,000 actual and $1 million punitive damages. The trial court subsequently reduced the actual damages by twenty per cent for Bryant's comparative negligence and denied all post-trial motions.

## LAW/ANALYSIS

### I.

Waste Management first argues the trial court erred in granting Bryant's motion to add it to the suit as the real

---

1. These other defendants were dismissed prior to trial.

party in interest. Although the motion was styled as a "Motion to Amend and to Join the Real Party in Interest," in actuality, it was a motion to substitute a party pursuant to Rule 25(c), SCRCP, because the litigation had commenced at the time of the transfer in interest.[2]

■ Rule 25(c) provides: "In case of any transfer of interest, the action may be continued by or against the original party, *unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action* or joined with the original party."[3] Rule 25(c) applies to the transfer of interest from one corporation to another with which the first merged.[4]

■ Here, the trial court found Waste Management was the proper party defendant because Chambers, the original defendant, had been subsumed by USA Waste Services, which in turn merged with Waste Management. One of the distinguishing characteristics of a merger is that "the surviving corporation has all liabilities and obligations of each corporation party to the merger."[5] When a corporate defendant is absorbed by merger during the pendency of an action against it, the plaintiff is entitled to have the absorbing corporation substituted as a party defendant.[6]

---

**2.** Rule 25(c) is applicable where there is a transfer of interest *during* the pendency of an action, whereas Rule 17 is applicable where there is a transfer of interest *prior to* the commencement of an action. 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 1958, at 553 (2d ed.1986). Here, Bryant filed suit on February 14, 1997, but USA Waste Services did not merge with Waste Management until September 28, 1998.

**3.** Rule 25(c), SCRCP (emphasis added).

**4.** *De Villiers v. Atlas Corp.,* 360 F.2d 292 (10th Cir.1966).

**5.** S.C.Code Ann. § 33–31–1105(3) (Supp.1999). *See also R.C. McEntire & Co. v. Eastern Foods, Inc.,* 702 F.2d 471 (4th Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983) (holding transferee or successor corporation remains fully liable for liabilities of transferor corporation upon merger).

**6.** *See Burrow v. Otto Sarony Co.,* 132 A.D. 797, 117 N.Y.S. 537 (1909) (holding plaintiff was entitled to have merged corporation substituted for absorbed corporation when merger officially took place after the summons was served).

■ A trial court has the sound discretion to substitute parties when some act has affected the capacity of a named party to be sued,[7] and its decision will not be reversed on appeal absent a showing of an abuse of discretion.[8] Here, ample evidence supports the trial court's ruling that a merger had occurred between USA Waste Services and Waste Management: (1) the deposition and trial testimony of Wally Briscoe, a district manager of Waste Management[9]; (2) the trial testimony of Anthony Adams, operator of the container truck[10]; (3) the trial testimony of John O'Neil, an operations manager for Waste Management[11]; (4) documentary evi-

---

7. *R.J. Enstrom Corp. v. Interceptor Corp.*, 555 F.2d 277 (10th Cir.1977).

8. *Id.; Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150 (6th Cir.), cert. denied, 506 U.S. 867, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992).

9. The deposition testimony of Wally Briscoe, a district manager for Waste Management's hauling division contains the following:
 Q: Now, the Waste Management Company, that's a recent name change for your company, isn't it?
 A: Yes.
 . . . .
 Q: Prior to July 16th of 1998, what was the name of your company?
 . . . .
 A: Chambers Waste Systems of South Carolina, Inc., and that was a division of USA Waste Services.
 Q: Were you also involved with Chambers Landfill, Inc., of South Carolina?
 A: Yes. I'm district manager.
 Q: So, all three of those companies have since been *merged* with what's now become Waste Management? (emphasis added)
 A: Correct.
 Q: And that is the company which you work with today?
 A: Yes.

10. The trial testimony of Anthony Adams provides:
 Q: And you started to work for these folks at Waste Management, and I believe it was in April of 1996, the spring before this happened to Terrance, correct?
 A: Yes, I did.

11. The trial testimony of John O'Neil provides:
 Q: And this is a report that you have to send to Atlanta, isn't it? . . . For USA Waste Services, Incorporated?
 . . . .
 A: Yes, sir.
 Q: Which now's [sic] become?
 A: We've merged with Waste Management.

dence [12]; and (5) the fact that Waste Management did not contest statements of merger or request a continuance following the substitution and was represented by the same lawyers.

We hold the trial court did not abuse its discretion in substituting Waste Management for USA Waste Services in the case.[13]

## II.

Waste Management next argues the trial court erred in instructing the jury that a violation of federal Occupational Safety & Health Administration (OSHA) regulations constituted negligence per se. We agree.

At trial, Waste Management objected to a jury charge that read:

[T]he federal Occupational Safety and Health Administration has adopted regulations that require employers to warn employees and others of potential hazards by posting signs. If you believe from the evidence that this regulation was violated by Waste Management, you may consider this violation as evidence of negligence on the part of the defendant.

Waste Management contends the jury charge was inappropriate because it was not Bryant's employer. In other words, Waste Management maintains OSHA only establishes a standard of care between an employer and its employees and not any standard of care between an employer and third parties.

---

**12.** The documentary evidence includes: Anthony Adams' application for employment with Chambers; Adams' confidentiality agreement with Chambers; Adams' employee savings plan with USA Waste Services; Adams' employment eligibility verification for Chambers/USA Waste Services; Adams' Medical Services Report for Chambers/USA Waste Services; USA Waste Service's Safety Report; and USA Waste of South Carolina's Articles of Incorporation.

**13.** *Cf. Superscope, Inc. v. Benjamin Co.,* 276 S.C. 231, 234, 277 S.E.2d 596, 598 (1981) (finding. that a trial court has the discretionary power to grant amendments, including substitution of parties, if it does not bring about "a substantial change in the nature of the action or deprive[ ] a party of a substantial right"); *Israel v. Carolina Bar–B–Que, Inc.,* 292 S.C. 282, 356 S.E.2d 123 (Ct.App.1987) (affirming substitution of party defendant who knew the factual situation of the case, was not taken by surprise, and had no need to change the nature of his defense).

■ Recently, in *Duncan v. CRS Sirrine Engineers, Inc.,*[14] this court held OSHA standards may not be used to impose liability on a third-party contractor. "OSHA standards protect employees working for any business qualifying as an *employer* under the Occupational Safety and Health Act."[15] To determine whether a party is an employer under the act, we must ascertain whether the party has a right to control the employee's work.[16] Here, Waste Management had no right to control Bryant's work and was thus not his employer. It was error, then, to charge the jury that Waste Management's failure to comply with the OSHA regulation was negligence per se.

■ Waste Management, however, has not shown it was prejudiced by this error because there existed other bases upon which the jury could find it liable.[17]

■ The "two issue rule" states that when a case is submitted to the jury on two or more theories and, as here, a general verdict is returned, the verdict will be upheld if it is supported by at least one theory.[18]

Here, Bryant asserted six theories of negligence in its complaint: (1) providing a waste container that was missing a front wheel roller; (2) not maintaining garbage trucks in good mechanical condition when it knew or should have known a part was malfunctioning; (3) providing a waste container in a defective condition without reasonable and necessary warnings; (4) failing to properly train its employee on safe and

---

14. 337 S.C. 537, 524 S.E.2d 115 (Ct.App.1999) (emphasis added).

15. *Id.* at 545, 524 S.E.2d at 119.

16. *Id.*

17. *See Ellison v. Simmons,* 238 S.C. 364, 372, 120 S.E.2d 209, 213 (S.C.1961) ("The giving of an erroneous instruction is not reversible error, unless the appellant can show that he was injured and prejudiced thereby.").

18. *Anderson v. West,* 270 S.C. 184, 241 S.E.2d 551 (1978); *Harry L. Hussmann Refrigerator & Supply Co. v. Cash & Carry Grocer, Inc.,* 134 S.C. 191, 132 S.E. 173 (1926); *Creach v. Sara Lee Corp.,* 331 S.C. 461, 502 S.E.2d 923 (Ct.App.1998); *Gasque v. Heublein, Inc.,* 281 S.C. 278, 315 S.E.2d 556 (Ct.App.1984).

proper methods for hoisting a waste container; (5) failing to warn Bryant that its equipment was defective and not working as it was designed and manufactured; and (6) failing to use the degree of care and caution a reasonable corporation would have used under like circumstances.

At trial, Anthony Adams, Waste Management's employee, testified that a wheel roller from the container that fell on Bryant's foot had been missing since April 1996. Dennis Fincher, an operations supervisor at MWWTP, testified he noticed that the wheel roller was still missing from the container three or four days before Bryant was injured. Also, Dr. Bradberry testified the container fell because it was misaligned and the absence of the wheel roller exacerbated the misalignment.

Because the jury rendered a general verdict and could have relied upon any of these allegations of negligence to find Waste Management liable and because there is ample evidence supporting at least one of these allegations, particularly the allegation regarding the missing wheel roller, we cannot say Waste Management was prejudiced by the jury charge in issue.

### III.

Waste Management asserts further error in the court's failure to charge there existed no duty to warn of an open and obvious condition.

At trial, Dr. Douglas Bradberry testified Waste Management failed to warn Bryant of the hazards associated with hoisted containers. He opined two warnings should have been given: first, a warning "[to] stay clear at all times when the container is off the ground," and second, a warning "[to] stand clear when the container is off the ground."

Waste Management presented testimony, however, that Bryant was aware of the harm without this warning because he cautioned a co-worker, Ronald Caulder, just prior to the accident to be careful around containers that had been hoisted onto the truck. From Caulder's testimony, Waste Management concluded the danger was open and obvious to Bryant and it was, therefore, entitled to an open and obvious danger

charge. Waste Management maintains this failure deprived it of the opportunity to defend itself and warrants reversal.

Again, we find Waste Management suffered no prejudice in the court's failure to issue the requested jury charge.[19] The jury could have relied upon any number of theories of negligence in finding Waste Management liable. Furthermore, not all of the theories of negligence Bryant asserted related to the alleged open and obvious condition of the hoisted container. To the contrary, the theory regarding the missing roller wheel was wholly unrelated to it.

Pursuant to the "two issue rule," we uphold the trial court's decision not to give the charge.

## IV.

Waste Management next contends the trial court erred in admitting evidence of financial data in excess of its stated net worth, *i.e.,* assets minus liabilities, for consideration by the jury in determining punitive damages. We disagree.

Bryant's expert, Dr. Oliver Wood, initially testified that U.S.A. Waste Services had $6.6 billion worth of assets.[20] Wood subtracted from that figure U.S.A. Waste Service's liabilities of $ 4 billion to arrive at a net worth of $2.628 billion. Wood then testified about changes in shareholders' equity, the annual operating revenue and annual operating revenue per day of U.S.A. Waste Services, and the net income and net income per day of U.S.A. Waste Services. In summarizing his testimony, Wood stated U.S.A. Waste Services' net income per day totaled $731,589.

Waste Management argues the trial court's admitting any testimony beyond that of net worth was error. Although a defendant's net worth has been the standard used to prove a

19. *See Ellison,* 238 S.C. at 372, 120 S.E.2d at 213 (giving of erroneous instruction is not reversible error unless appellant shows injury and prejudice).

20. Dr. Wood's testimony reflected the financial condition of U.S.A. Waste Services because the corporation did not merge with Waste Management until 1998 and his data traces the financial condition from 1994 to 1997. Dr. Wood testified Waste Management's financial data would have been even greater than that of U.S.A. Waste Services.

corporation's ability to pay punitive damages,[21] net worth is merely one indicia of a corporation's financial condition.[22]

Our courts have never limited proof of a corporation's ability to pay to evidence of net worth as Waste Management would have us do. Thus, we decline to prescribe such a rigid standard because net worth alone may not always be illustrative of a corporation's financial situation. As other courts addressing the issue have noted, factors regarding a party's financial situation beyond that of net worth may be relevant to the amount of punitive damages necessary to punish and deter a defendant.[23]

We hold the trial court did not err in admitting evidence of Waste Management's financial condition beyond that of net worth.

## V.

 Waste Management further claims the trial court erred in denying its new trial motion because the jury's $1 million verdict violated the "fundamental principles" underlying punitive damages. We disagree.

---

**21.** *See Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991) (holding punitive damages must be based on the defendant's ability to pay).

**22.** *See Herman v. Sunshine Chem. Specialties*, 133 N.J. 329, 627 A.2d 1081, 1090 (1993) ("[Net worth] can be an elusive concept, a potentially-puzzling indicator of current value, and of questionable utility. Notwithstanding these problems, net worth remains one of the indicia of financial condition.") (citations omitted).

**23.** *See Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 929 (S.D.1994) ("Net income is an appropriate yardstick for determining punitive damages."); *Kenly v. Ukegawa*, 16 Cal.App.4th 49, 19 Cal. Rptr.2d 771, 777 (1993) ("We [ ] do not hold that profit may not be considered, but only conclude it is error to focus on profit to the exclusion of all other information demonstrating defendants' ability to pay."); *Herman*, 627 A.2d at 1089 ("[Ability to pay] does not necessarily equate with net worth. Depending on the facts of a case, a defendant's income might be a better indicator of the ability to pay."); *Jones v. Fisher*, 42 Wis.2d 209, 166 N.W.2d 175, 181 (1969) ("Net worth may not in all instances be the best measure of an individual's ability to respond in damages. We believe a more accurate gauge is his financial resources, which include his earnings as well as his net worth.").

■ In *Gamble*, our supreme court outlined the factors for courts to consider in assessing the appropriateness and due process considerations of a punitive damages award: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from this conduct; (7) defendant's ability to pay; and (8) "other factors" deemed appropriate.[24]

Here, the trial judge conducted a thorough review pursuant to *Gamble* and found the jury's award "fair and appropriate *if not a little bit low.*" As the court stated regarding punitive damages:

> The amount of damages, actual or punitive, remains largely within the discretion of the jury, as reviewed by the trial judge. We adhere to the precedent that this Court's review is limited. The rationale for vesting discretion in the trial court was aptly expressed in *Lucht v. Youngblood*, 266 S.C. 127, 221 S.E.2d 854 (1976): 'The reasonableness of the verdict was challenged before the trial judge and he reduced it. The fact he heard the evidence and was more familiar than we with the evidentiary atmosphere at trial gives him, we think, a better informed view than we have. This is particularly true when the elements of damage are intangibles and the appraisal depends somewhat on an observation of the [witnesses] and evaluation of their testimony.' Only when the trial court's discretion is abused, amounting to an error of law, does it become the duty of this Court to set aside the award.[25]

The trial court did not abuse its discretion in refusing to grant a new trial on this basis.

## VI.

■ Finally, Waste Management contends the trial court, in violation of *BMW v. Gore*,[26] erred in permitting Bryant to

---

24. *Gamble*, 305 S.C. at 111–12, 406 S.E.2d at 354.

25. *Id.* at 112, 406 S.E.2d at 355 (internal citations omitted).

26. 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

argue its nationwide business practices. Waste Management, however, did not object on this ground during Bryant's argument. The issue, therefore, is not preserved for our review.[27]

**AFFIRMED.**

CURETON, J., and MOREHEAD, Acting Judge, concur.

---

27. *See McKissick v. J.F. Cleckley & Co.,* 325 S.C. 327, 344, 479 S.E.2d 67, 75 (Ct.App.1996) ("[An] objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial judge."); *Gurganious v. City of Beaufort,* 317 S.C. 481, 454 S.E.2d 912 (Ct.App.1995) (a party may not present one ground at trial and then change his theory on appeal; the same ground argued on appeal must have been argued at trial).