THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 George W. Fickens, Appellant.
 
 
 

Appeal From Colleton County
 Jackson V. Gregory, Circuit Court Judge
Unpublished Opinion No. 2007-UP-194
Submitted April 2, 2007  Filed April 26, 2007

AFFIRMED

 
 
 
 Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Shawn L. Reeves, all of Columbia; and Solicitor I. McDuffie Stone, III, of Beaufort; for Respondent.
 
 
 

PER CURIAM:  George W. Fickens was convicted of felony driving under the influence (DUI) and sentenced to sixteen years imprisonment.  He appeals, arguing the trial court erred in refusing to suppress the blood alcohol test results because the State failed to:  (1) establish a complete chain of custody; (2) comply with the videotaping and affidavit requirements of South Carolina Code section 56-5-2953 (2006); and (3) comply with Fickens discovery request for proficiency tests relating to the SLED toxicologist.  We affirm.[1]
FACTS
On June 30, 2004, Janette Dunn called the Highway Patrol to alert them that a small black car was weaving in and out of traffic on the westbound lane of Highway 63 near Walterboro and nearly sideswiped her car.  After Dunn drove into the median to avoid being hit by the small black car, she continued westbound on the road behind the car.  The small black car continued weaving in and out of traffic in the westbound lane before it rounded a curve in the road.  When Dunn rounded the same curve, she saw that the small black car had collided with a white car on the shoulder of the eastbound lane.  The driver of the white car, Rosa Dopson, was trapped in the vehicle and suffered serious injuries to her face and forehead.  She was transported to the Medical University of South Carolina where she later died from blunt force trauma to the head.  The driver of the small black car, Fickens, was also trapped under the steering wheel of his car and had to be extricated by emergency personnel.  
 
Lance Corporal Rich Riney of the South Carolina Highway Patrol was the first officer on the scene.  He testified that Fickens passenger was unhurt but extremely intoxicated, and the passenger admitted to throwing a bottle of beer in the woods.[2]  Trooper Riney found two bottles of Budweiser in brown paper bags:  a mostly-consumed twenty-two ounce bottle on the drivers side floorboard and a freshly blood-stained bottle on the ground near Fickens car.  According to Riney, Fickens smelled strongly of alcohol, his speech was slurred, and he was unable to communicate with anyone at the scene.  Paramedic Melissa Feathers, who treated Fickens at the scene, also testified that Fickens clothes and breath smelled strongly of alcohol and Fickenss had slurred speech.  
 
Fickens was transported to the hospital where, at the direction of Trooper Riney, Nurse Shannon Mayes drew Fickens blood.  A blood alcohol test showed that Fickens blood alcohol level was .277 percent.  Fickens was later charged with felony DUI.  Over his objections, the results of Fickens blood alcohol test were admitted at trial.  This appeal followed his conviction. 
 
LAW/ANALYSIS
I.  Chain of Custody
Fickens argues the trial court erred in admitting the blood alcohol test results because there was no evidence as to the identity of the person who took the blood evidence from Trooper Riney at the SLED headquarters and placed the evidence in the locked refrigerator.  Thus, Fickens argues, the State failed to establish a complete chain of custody.  We disagree.
 
Whether to admit or exclude evidence is a decision within the sound discretion of the trial court.  State v. Horton, 359 S.C. 555, 566, 598 S.E.2d 279, 285 (Ct. App. 2004).  The courts decision to admit evidence will not be reversed on appeal absent an abuse of discretion.  Id.  Thus, this court looks to whether the trial courts decision was controlled by an error of law or was without evidentiary support.  State v. Taylor, 360 S.C. 18, 23, 598 S.E.2d 735, 737 (Ct. App. 2004).  If there is any evidence to support the trial judges decision, the appellate courts will affirm it.  Id. 
 
In order to admit blood or other fungible evidence, the State must prove a complete chain of custody, as far as practicable, tracing possession of the evidence from the time it was taken until the time it was analyzed.  South Carolina Dept of Soc. Servs. v. Cochran, 364 S.C. 621, 628-29, 614 S.E.2d 642, 646 (2005) (We have consistently held complete chain of evidence must be established as far as practicable, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed.); State v. Carter, 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001) (The State must prove a chain of custody for a blood sample from the time it is drawn until it is tested.).  The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.  Cochran, 364 S.C. at 629-30, 614 S.E.2d at 647.  Generally, our courts have found evidence inadmissible only where there is a missing link in the chain of possession because the identity of those who handled the blood was not established as far as practicable.  Carter, 344 S.C. at 424, 544 S.E.2d at 837; State v. Governor, 362 S.C. 609, 612, 608 S.E.2d 474, 475 (Ct. App. 2005).  However, our supreme court has recently noted that it has never held the chain of custody rule requires every person associated with the procedure be available to testify or identified personally, depending on the facts of the case.  Cochran, 364 S.C. at 629-30, 614 S.E.2d at 647.               
 
Nurse Shannon Mayes testified that she drew Fickens blood in Trooper Rineys presence, placed the blood into an uncontaminated vial, sealed the vial, and gave the vial to Trooper Riney.  Mayes stated she then witnessed Riney place the vial in an evidence box which he then sealed.  Trooper Riney testified that he witnessed Nurse Mayes draw Fickens blood and seal and initial the vial.  Riney stated that after he received the vial from Mayes, he sealed it in an evidence box and then drove it to the locked evidence refrigerator at the Walterboro Highway Patrol office.  Sergeant Brown opened the lock so Riney could place the box in the refrigerator, and then Brown locked it again.  Riney testified that the following day Sergeant Brown unlocked the refrigerator so that Riney could retrieve the box and take it to the SLED laboratory in Columbia.  According to Riney, the box was in the same condition as it was when placed in the refrigerator and was still sealed. 
 
Riney stated that once at SLED headquarters in Columbia, a SLED technician took the evidence, unsealed the Styrofoam container in his presence, placed the still-sealed vial of blood in a heat-sealed bag, and sealed the bag in Rineys presence.  The SLED technician then had Riney place his initials over the heat seal, and Riney placed the evidence in the locked refrigerator under the SLED technicians supervision.  SLED toxicologist Laurie Shacker testified that the sealed evidence bag was brought to her by someone in the toxicology department from the locked refrigerator and that it was not tampered with in any way prior to her testing it.   
Fickens objected to the admission of the blood alcohol test evidence, arguing the chain was not complete because the State did not present evidence of the identity of the person at SLED who took the evidence from the locked evidence refrigerator and gave it to Shacker.  The trial judge denied the motion.  
 
Although the identity of the SLED technician who transported the sealed blood evidence to Shacker was not identified, we believe the State established a sufficient chain of custody, as far as practicable, such that it proved, to a reasonable probability, that the blood was the same as, and not substantially different from, the [blood] as it existed at the beginning of the chain.  Cochran, 364 S.C. at 629-30, 614 S.E.2d at 647.  The blood vial was sealed by Nurse Mayes, maintained in the Highway Patrols locked evidence refrigerator, transported to SLED by Trooper Riney while still in its orginial sealed condition, placed in another heat-sealed evidence bag at SLED and then placed by Trooper Riney in the evidence refrigerator, and then obtained by Shacker, still in its sealed condition and un-tampered with.  Thus, the State reasonably established a complete chain of possession and that the evidence was still in the same condition when it was tested as it was when originally obtained from Fickens in the hospital.
 
Further, as previously discussed, our state supreme court has recently noted that, depending on the circumstances of a particular case, the failure to identify one person involved in the chain of custody may not render the evidence inadmissiable.  In Cochran, the Department of Social Services sought the termination of a mothers parental rights based, in part, on her failure of two drug tests.  Mother complained that DSS failed to establish a complete chain of custody over her blood samples because the identity of the courier who transported the blood from the collection site to the testing facility was unknown.  The court noted evidence was presented that the vials were sealed at the collection site and arrived at the testing facility still in a sealed condition.  Cochran, 364 S.C. at 629, 614 S.E.2d at 646.  The court also noted that every person involved in actually testing the blood testified as to their handling of the samples.  Id.  The court held that, generally, we will uphold the chain of custody if the safeguards instituted ensure the integrity of the evidence, even if every person associated with the procedure is not personally identified.  Id.  
 
Like the court in the Cochran case, we believe the particular facts in the present case show that the chain of custody was sufficiently established to negate the possibility of tampering and to show that the evidence arrived in the same condition for testing as it was when it was taken from Fickens.  Accordingly, we find no error with the trial courts decision to admit the blood evidence. 
 
II.  Section 56-5-2953
Fickens argues that because Trooper Riney failed to videotape the incident and failed to submit an affidavit explaining why he failed to videotape the incident, the blood evidence should have been suppressed.  We disagree.
Section 56-5-2953 provides that a person suspected of violating the DUI laws must have his conduct videotaped at the incident site and the breath test site.  S.C. Code Ann. § 56-5-2953(A) (2006).  The section further provides that:

 Nothing in this section may be construed as prohibiting the introduction of other evidence in the trial of a violation of [the DUI statutes.]  Failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal of any charge made pursuant to [the DUI statutes] if the arresting officer submits a sworn affidavit certifying that the videotape equipment at the time of the arrest, probable cause determination, or breath test device was in an inoperable condition, stating reasonable efforts have been made to maintain the equipment in an operable condition, and certifying that there was no other operable breath test facility available in the county or, in the alternative, submits a sworn affidavit certifying that it was physically impossible to produce the videotape because the person needed emergency medical treatment, or exigent circumstances existed. Further, in circumstances including, but not limited to, road blocks, traffic accident investigations, and citizens arrests, where an arrest has been made and the videotaping equipment has not been activated by blue lights, the failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal.  However, as soon as videotaping is practicable in these circumstances, videotaping must begin and conform with the provisions of this section.  Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the videotape based upon the totality of the circumstances; nor do the provisions of this section prohibit the person from offering evidence relating to the arresting law enforcement officers failure to produce the videotape.

S.C. Code Ann. § 56-5-2953(B) (2006).  
At trial, Trooper Riney testified that he did not videotape the accident scene, nor did he submit an affidavit to explain the failure to videotape the scene.  Riney further testified that he could not have videotaped Fickens at the scene, considering:  the position of Fickens car after the accident; the fact that Fickens was trapped inside the car; and the inability to remove the patrol car camera and then take it to Fickens car to film.  Fickens admitted before the trial court that although the remedy for the failure to videotape the incident may not be the dismissal of the case, he argued that suppression of other evidence found at the scene, including the beer bottles and the testimony regarding the smell of alcohol, was warranted.  The trial court denied Fickens motion. 
 
Initially, it does not appear that Fickens argument is preserved for appellate review.  Although Fickens argued before the trial court that evidence found at the scene should be suppressed due Trooper Rineys failure to comply with section 56-5-2953, Fickens did not argue the blood alcohol test evidence should be suppressed due to the failure to videotape the accident scene or submit an affidavit.  Thus, the argument that the blood alcohol test evidence should have been suppressed due to failure to comply with the statute was not raised to or ruled upon by the trial court and may not now be raised for the first time on appeal.  Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that issues not raised to or ruled upon by the trial court are not preserved for appellate review); Bryant v. Waste Mgmt., Inc., 342 S.C. 159, 171-72, 536 S.E.2d 380, 387 (Ct. App. 2000) (holding that a party may not argue one ground at trial and an alternate ground on appeal).  
 
In any event, we find Trooper Rineys failure to comply with the videotaping and affidavit portions of the statute did not warrant suppression of the blood alcohol test evidence.  The statute provides that the failure to produce a videotape is not alone a ground for dismissal of any charge.  S.C. Code Ann. § 56-5-2953(B) (2006).  Thus, a clear reading of the statute provides possible dismissal of the charge due to failure to comply with the statute.  Nothing in the statute, however, provides for suppression of evidence as a remedy when the State fails to comply with the statute.  In fact, the opening sentence in subsection B explicitly provides that the statute must not be construed to prohibit the introduction of other evidence of intoxication.  S.C. Code Ann. § 56-5-2953(B) (2006).
 
Further, the statute allows the trial court to consider the totality of the circumstances in reviewing the arresting officers failure to produce a videotape.  Id.  Reviewing the totality of the circumstances, there was evidence that Trooper Riney could not have videotaped Fickens based on the position of his car, the fact that Fickens was trapped in the car, and the fact that the camera was securely attached to Rineys patrol car.  Considering the exigent nature of the accident and the other circumstances, we find Trooper Riney had a valid reason for failing to produce a videotape.   
Even assuming the statute provides for exclusion of the blood alcohol evidence as a remedy for the States failure to produce a videotape, we find the error would have been harmless.  Two witnesses saw Fickens car weaving in and out of traffic prior to the accident.  Both Trooper Riney and the responding paramedic testified that Fickens smelled strongly of alcohol and was incoherent.  Two twenty-two ounce beer bottles were found on the scene.  Despite the fact that Fickens was driving in the westbound lane, the accident occurred with both Fickens and the victims cars off the shoulder in the eastbound lane.  This evidence would reasonably support Fickens conviction for felony DUI without the blood alcohol evidence.  Thus, any error in admitting the blood alcohol evidence is harmless.  State v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) (holding that an error is harmless when it could not have reasonably affected the outcome of the trial).
III.  Failure to comply with discovery requests
Fickens argues that the State failed to provide the proficiency tests of SLED toxicologist Shacker pursuant to Fickens Brady[3] motion.  Fickens asserts the trial court should have conducted a hearing because he made the threshold showing that the proficiency tests were material.  Therefore, Fickens argues, the trial court erred in admitting the blood alcohol evidence.   We disagree. 
 
To comply with a Brady request for disclosure of exculpatory evidence, the State must disclose both impeachment and exculpatory evidence favorable to a defendant which is material to guilt or punishment.  United States v. Bagley, 473 U.S. 667, 676 (1985); State v. Von Dohlen, 322 S.C. 234, 241, 471 S.E.2d 689, 693 (1996).  Evidence is material under Brady if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different.  State v. Proctor, 358 S.C. 417, 421, 595 S.E.2d 476, 478 (2004).  Once a defendant makes the threshold showing that the evidence he seeks is material, the trial court should conduct a hearing.  Id. at 422, 595 S.E.2d at 478.  For Brady purposes, in determining the materiality of nondisclosed evidence, an appellate court must consider the evidence in the context of the entire record.  State v. Talyor, 333 S.C. 159, 177, 508 S.E.2d 870, 879 (1998).  The court should not consider the sufficiency of the evidence, and it should only consider whether the appellants right to a fair trial was impaired.  Proctor, 358 S.C. at 423, 595 S.E.2d at 479.  

We initially note that this argument is not preserved for appellate review.  Fickens complained to the trial court that, although he filed a discovery request for Shackers proficiency tests, the State failed to turn them over to him.  Fickens argued that it rendered him unable to adequately cross-examine Shacker, and thus the blood test results should be suppressed.  Fickens never argued the failure to turn over the proficiency tests amounted to a Brady violation.  He also did not argue the tests were material or request a Brady hearing.  Thus, the Brady issue before us was never raised to or ruled upon by the trial court and is raised for the first time on appeal.  Staubes, 339 S.C. at 412, 529 S.E.2d at 546 (holding that issues not raised to or ruled upon by the trial court are not preserved for appellate review); Bryant, 342 S.C. at 171-72, 536 S.E.2d at 387 (holding that a party may not argue one ground at trial and an alternate ground on appeal).  
 
Even assuming the Brady issue was adequately presented to the trial court, we find no error with the trial courts actions.  Nothing in the record indicates that the State ever had possession of Shackers proficiency tests or what Shackers proficiency scores were.  Thus, it is impossible to determine whether the proficiency scores were material to Fickens defense.  Nevertheless, Fickens was able to adequately cross-examine Shacker regarding the procedures used during the blood sample collection and testing.  Further, in light of all the other evidence presented at trial, we find any error in failing to suppress the alcohol blood tests due to an alleged Brady violation by the State would be harmless.  Mitchell, 286 S.C. at 573, 336 S.E.2d at 151 (holding that an error is harmless when it could not have reasonably affected the outcome of the trial); see Proctor, 358 S.C. at 424, 595 S.E.2d at 480 (finding that the nondisclosure of DNA proficiency test results was not material considering the fact that the other evidence was formidable).   
Accordingly, we find Fickens right to a fair trial was not impaired and we find no error with the trial courts decision to admit the blood alcohol test results.
 
CONCLUSION
Because the trial court did not err in failing to suppress Fickens blood alcohol test results, Fickens conviction and sentence are
AFFIRMED.
HUFF, BEATTY, and WILLIAMS, JJ., concur.

[1] Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The passenger was arrested for violating the open container law, littering, and public drunkenness.  
 
[3] Brady v. Maryland, 373 U.S. 83 (1963).