THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Mace Watts, Respondent,
 v.
 Karen Watts, Appellant.
 
 
 

Appeal from Horry County
 Wylie H. Caldwell, Jr., Family Court Judge
Unpublished Opinion No. 2007-UP-315
Submitted February 1, 2007  Filed June 12, 2007

AFFIRMED IN PART,
REVERSED IN PART

 
 
 
 Johnny Gardner, of Conway, for Appellant.
 Anita Ruth Floyd, of Conway, for Respondent.
 
 
 

PER CURIAM:  In this domestic matter, Karen Watts (Mother) argues the family court erred in:  (1) failing to award her attorneys fees and costs; (2) modifying the parties visitation schedule; and (3) finding her in contempt for denying Mace Watts (Father) visitation with their minor child.  We affirm in part and reverse in part.[1]
FACTS
The parties were married on September 2, 1995, and they had one child (Son).  In 2002, Mother discovered Father was involved in an adulterous relationship, and both parties filed for divorce.  Father never denied the adultery, and a decree granting a divorce on that basis was filed March 27, 2003.  Incorporated into the divorce decree was a consent agreement concerning custody, visitation, property division, alimony, and additional payments to Mother.  It was agreed that primary custody of Son would go to Mother, with liberal visitation to Father, including:  every other weekend; every other Tuesday evening; the first Wednesday of every month for Boy Scouts; four weeks of visitation during the summer months; from the beginning of Christmas break until 4:00 p.m. on Christmas Eve; alternating Spring Break/Easter and Thanksgiving holidays; every Fathers Day weekend; and daily telephone visitation on days Son was with Mother.  It does not appear from the record that either party appealed from the final divorce decree. 
 
Thereafter, the parties had a contemptuous relationship at the expense of their son.  A few days after the final divorce hearing, Mother requested money from Father to help with Sons candy sale fundraiser at school.  Instead of placing the check under Mothers doormat in advance, as requested, Father sent a check to the school late through an assistant, and Mother tore the check up in front of Son and his classmates.  Although Mother was awarded custody of Son every Mothers Day weekend, Father planned his wedding to his former paramour, Bobbie, for the Friday of Mothers Day weekend at Bald Head Island, North Carolina.  Mother refused to allow Son to attend the wedding, and she insisted that Son attend the Moms and Muffins event that same Friday morning at school in Horry County.  Father claimed Mother interfered with his court-ordered telephone visitation with Son by not answering the telephone or by yelling at him over the phone in Sons presence.  Mother denied interfering with telephone visitation, but she claimed Father called all the time and she sometimes avoided the constant telephone calls.  There was also an incident where Father came to Mothers house, despite being warned that he should not appear there, demanded that Mother sign the parties tax returns on short notice and without giving her a copy, and still failed to file the tax returns for several months.      
On April 30, 2003, Father filed the underlying action primarily requesting modification of visitation so that he could have Son on Mothers Day weekend to participate as his best man in his wedding.   The complaint also requested modification of visitation in general, a finding of contempt against Mother for denying him visitation with the child, and a determination of whether Mother was a fit and proper person to maintain custody of the child.  Father obtained an emergency order to ensure that Son could go to the wedding in North Carolina.  However, on the morning of the wedding, Father returned Son to his school at 7:15 a.m. for the Moms and Muffins event.  Mother did not arrive at the Moms and Muffins event until it was nearly over, and she later drove Son that morning to Bald Head Island, North Carolina, for Fathers wedding that evening.    
 
After Fathers wedding, several confrontations between Mother, Father, and Bobbie took place.  Mother changed Sons school without informing Father.  Mother refused to allow Bobbie and Father to pick up Son for Fathers visitation at Sons school.  In one instance, when Mother learned Bobbie had accompanied Father to the school to pick Son up for weekend visitation, Mother took Son, placed him in her car, and attempted to leave with him.  Father then blocked Mothers exit, causing the police to be called and again embarrassing Son in front of his classmates.  Mother claimed that the visitation agreement did not allow Father to pick Son up from school.  Mother also arranged to volunteer at Sons school on Fridays when Father picked Son up for visitation, which led to unnecessary confrontations.  Mother further failed to inform Father that notices were sent to the former marital home regarding a bad check that he had written, ultimately resulting in Father getting arrested at Sons school for writing a bad check.     
Mother eventually filed an answer and counterclaim, generally denying Fathers allegations and claiming that Bobbie was a dangerous, immoral person and not proper to care for Son.  A trial was held on the matter on February 17, 18, and 19, 2004.  The court issued an order chastising both parties for their behavior which was detrimental to Son and modifying visitation.  Because the parties disputed the location that Father should pick up Son for exercising visitation, the court specified that Father should pick up Son at school and return Son to school during the school year and pick him up from his home at noon on Friday and return Son home at noon on Monday when school is not in session.  The court granted Father additional overnight visitation on alternating Wednesdays.  The court also specified the weeks Father could exercise summer visitation, granted Father visitation every Thanksgiving holiday, changed the parties previously agreed upon Christmas visitation schedule, and limited Fathers telephone visitation with Son to 7:00 p.m. every Thursday.  The court held Mother in contempt for interfering with Fathers visitation and directed each party to pay their own attorneys fees and costs.  Mothers motion to reconsider was denied, and this appeal followed.   
STANDARD OF REVIEW
On appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence.  Murdock v. Murdock, 338 S.C. 322, 328, 526 S.E.2d 241, 244-45 (Ct. App. 1999).  However, this broad scope of review does not require us to disregard the family courts findings.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).  Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Lacke v. Lacke, 362 S.C. 302, 307, 608 S.E.2d 147, 150 (Ct. App. 2005); see also Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996) (noting that because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the family courts findings where matters of credibility are involved).  Our broad scope of review does not relieve appellant of her burden to convince this court that the family court committed error.  Skinner v. King, 272 S.C. 520, 522-23, 252 S.E.2d 891, 892 (1979).
LAW/ANALYSIS
I.  Attorneys Fees 
Mother contends the family court erred in failing to award her attorneys fees and costs and erred in failing to consider and apply the relevant criteria for determining such awards.  We disagree. 
 
Initially, we note this issue is not preserved for appellate review.  Mother complained in her Rule 59(e), SCRCP, motion that the family court should have awarded her attorneys fees and costs because:  (1) Husband had the greater financial ability to pay the fees; and (2) Husband was largely unsuccessful in gaining custody or in most of his contempt complaints.   Mother never argued that the family court failed to consider the appropriate factors in reaching the decision that each party be responsible for their own fees.  Because the issue is being raised for the first time on appeal, it is not preserved for appellate review.  See Bryant v. Waste Mgmt., Inc., 342 S.C. 159, 171-72, 536 S.E.2d 380, 387 (Ct. App. 2000) (holding that a party may not argue one ground at trial and an alternate ground on appeal); Joubert v. South Carolina Dept of Soc. Serv., 341 S.C. 176, 184, 534 S.E.2d 1, 5 (Ct. App. 2000) (noting that issues not raised to or ruled upon by the trial court are not preserved for appellate review).     
In any event, the family court has statutory authority to assess attorneys fees against a party.  S.C. Code Ann. § 20-7-420 (38) (Supp. 2006); Patel v. Patel, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004).  An award of attorneys fees and costs is a discretionary matter not to be overturned absent abuse by the trial court. Donahue v. Donahue, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989).  In determining whether attorneys fees should be awarded, the court should consider the following factors:  the partys ability to pay his/her own attorneys fees; beneficial results obtained by the attorney; the parties respective financial conditions; and the effect of the attorneys fee on each partys standard of living.  E.D.M. v. T.A.M, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  In determining the reasonable amount of attorneys fees to award, the family court should consider the nature, extent and difficulty of the services rendered, the time necessarily devoted to the case, counsels professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  The same considerations apply when awarding litigation expenses.  Patel, at 533, 599 S.E.2d at 123.  An award of attorneys fees will be upheld as long as there is sufficient evidence in the record to support each factor.  Jackson v. Speed, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997).  
 
Mother argues her case is on point with this courts recent case of Lacke v. Lacke, 362 S.C. 302, 318, 608 S.E.2d 147, 155 (Ct. App. 2005).  In Lacke, the mother had to bring an action to enforce the fathers obligation from their divorce decree to help with their daughters college expenses.  The family court denied the mothers request for attorneys fees, stating:  I further find that both parties shall be responsible for their own attorney fees and costs associated with this action.  Lacke, 362 S.C. at 317, 608 S.E.2d at 155.  The Lacke court held that the succinct and brief statement fail[ed] to provide any evidence the trial court considered the appropriate factors in reaching its decision.  Id.  The question of whether attorneys fees should be awarded was remanded to the family court for consideration of the appropriate factors.  Id. at 318, 302 S.E.2d at 155.  
 

 In the present case, the family courts order stated: 
 
 
 Having concluded that both parties are at fault in this controversy, I conclude they should pay their own attorney fees.  The guardian ad litem worked hard on this case and rendered valuable service to [the child.]  He is a practicing attorney and his fees and costs of $10,569.56 plus $2,500.00 for his time in court (3 days) are reasonable.  The parties have each paid him $1,500.00 leaving a balance of $10,069.00.  This should be paid $7,500.00 by [Father] and $2,569.00 by [Mother.] 
 
 

Although the language from the underlying order is strikingly similar to the language found insufficient in Lacke, the instant case can be distinguished.  It is clear from the order that the family court in the present case considered both parties faults in bringing about the action and their respective abilities to pay when denying attorneys fees and apportioning the guardian ad litem fees according to a percentage of their respective incomes.  The record reflects that Father had a monthly income of $6,500, while Mother had a monthly income of $3,375, solely from alimony and child support.  Further, Father had to initiate this action after Mother interfered with this visitation rights, and the family court found in Fathers favor on several of the issues.  Although Mother claims she obtained some beneficial results from the suit, she was found in contempt for interfering with Fathers visitation and visitation was modified. 
 
Unlike the order in Lacke, we can glean from both the order and the record in the present case that the family court considered the appropriate factors in denying Mother attorneys fees.  Accordingly, we find the court did not abuse its discretion.
II.  Modification of Visitation 
Mother contends the family court erred in modifying the visitation schedule.  Mother argues the modification was in error because:  there was already a court-approved agreement regarding visitation filed less than two months before the present action was filed; the modified visitation was not in the childs best interest; the modification was not necessary or appropriate to resolve the parties visitation problems; and neither party requested such a modification in his/her pleadings.[2]  Mother argues that the only visitation problems raised at trial had to do with Fathers failure to give notice of the weeks he chose to exercise visitation during the summer of 2003 and the parties conflicting interpretations of the appropriate location to transfer Son for visitation.  
 
When awarding visitation, the controlling consideration is the welfare and best interest of the child.  Woodall v. Woodall, 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996).  Visitations orders are subject to continuing review and decisions regarding modification of visitation are also controlled by the best interest of the child.  King v. Gardner, 274 S.C. 493, 495, 265 S.E.2d 260, 262 (1980).  However, [w]hile visitation orders are subject to continuing review, a party may not receive relief not contemplated in the pleadings.  Aiken v. Aiken, 289 S.C. 370, 371, 345 S.E.2d 710, 711 (1986).  Decisions regarding visitation are left to the sound discretion of the family court and will not be disturbed absent an abuse of discretion.  Woodall, 322 S.C. at 12, 471 S.E.2d at 158.  
 
As a preliminary matter, it is clear that the family court had the authority to modify visitation because it was requested by both parties.  Although Fathers complaint focused primarily on modification of visitation so that Son could attend Fathers wedding, Father also made the following general statement:  [Father] brings this action for a modification of visitation, for Contempt, and for a determination of whether [Mother] is a fit and proper person to maintain custody of the parties minor child.  Mother also requested in her answer and counterclaim that the amount of visitation to be exercised by [Father] should be reviewed.  Thus, because modification of visitation was generally requested by both parties in their pleadings, the family court had authority to modify visitation.  Aiken, 289 S.C. at 371, 345 S.E.2d at 711.  
 
However, while the family court had the authority to modify visitation, some of the modifications went beyond the complaints at issue in the instant case.  We address Mothers individual complaints regarding the modification of visitation separately. 
 
A.  Additional Mid-Week Visitation 
The visitation agreement incorporated into the parties final divorce decree stated that On the Tuesday prior to his scheduled visitation weekend, [Father] will be entitled to visitation on Tuesday from after school until 7:00 p.m.  The modified visitation order stated that on the Wednesday of the week following weekend visits, Father will pick Son up from school and return him to school the following morning.  The modification allowed Father a mid-week overnight visitation not previously agreed to by the parties.  
 
We find no abuse of discretion in the family courts decision to grant an additional overnight visitation.  One of the major issues at trial concerned the parties confrontations when exchanging Son.  This modification allows Father his mid-week visitation and allows the parties to avoid contact with one another.   
B.  Summer Visitation 
Mother states in her brief that she agrees with the family courts modification of summer visitation to outline the specific weeks that Father must exercise visitation.  However, she argues the court inadvertently failed to address how weekend visitation would be handled during the summer months.  Mother alleges that it is possible that Father would spend nearly sixty days with Son and Mother would only spend thirty days with Son if Father is still entitled to weekend visitation during the summer months. 
 
The original visitation agreement stated that [Father] will be entitled to 3 additional weeks of visitation during the summer months of 2003 and thereafter, he will be entitled to 4 weeks of visitation during the summer months, to be exercised in 2 increments of 2 weeks each.  The agreement provided that Father could pick the dates for two of the weeks, that Mother could pick the dates for two of the weeks, and that both parties were to inform each other of the dates selected by April 15th of every year.  The original visitation agreement did not address how normal weekend visitation by Father would be handled during the summer months.  
 
In the underlying order, the family court modified visitation to provide that Father would have the child from noon Sunday until noon the following Sunday the second full week of June; the first and third full weeks of July; and the first week of August each summer.  The modifications allowed for the same amount of visitation during the summer as was provided in the original visitation agreement, but the modified visitation order specified the dates so as to reduce the disagreements between Father and Mother.  The order did not address how Fathers normal weekend visitation would be handled during the summer months.  Mothers motion for reconsideration argued that Father had no basis to complain about summer visitation, as it was outside the period of time contemplated by the change of custody and visitation action and, furthermore, [Father] failed to give proper notice as required by the Decree as to the weeks he chose to exercise.   
 
It is apparent that the family court was attempting to alleviate confrontations and communication problems between Father and Mother by setting precise dates for Fathers summer visitation.  Mother concedes on appeal that she approves of setting the dates.  Her only complaint is regarding how weekend visitation will be handled.  However, it does not appear that the issue of how to address weekend visitation during the summer months was ever determined in the original visitation agreement or ruled upon by the family court in the underlying case.  Thus, the issue is not preserved for appellate review and we may not address it.  Bryant, 342 S.C. at 171-72, 536 S.E.2d at 387; Joubert, 341 S.C. at 184, 534 S.E.2d at 5.  Although the manner in which weekend visitation is exercised during the summer may substantially impact the amount of time Mother would be able to spend with Son, Mother is still free to seek modification of the order in the family court for clarification of this issue.    
C.  Holiday Visitation 
Mother argues in her brief that the family court erred in modifying the holiday visitation schedule because neither party complained about the holiday schedule and the modifications substantially impacted her familys holiday traditions.  We agree.
 
The original visitation agreement provided that the parties would alternate the Spring Break/Easter and Thanksgiving holidays.  It also stated that:  [Father] will be entitled to visitation during the Christmas holiday from 12:00 noon on the day after school is released for this holiday until 4:00 p.m. Christmas Eve, when [Son] shall be returned to [Mothers] home.  [Mother] will then have continued possession until school resumes.  
 
The modified visitation order changed holiday visitation to grant Father visitation every Thanksgiving holiday.  The order also modified the Christmas holiday schedule by granting Father visitation on Christmas Eve from 4:00 p.m. until 7:00 p.m. and from 2:00 p.m. Christmas Day until December 31 at 2:00 p.m.  The modified visitation order did not address which parent would have Son during the Spring Break/Easter holiday.  
 
Fathers complaint did not address the holiday visitation schedule, and thus it was inequitable for the family court to modify holiday visitation.  The modified visitation significantly reduces the holidays Mother spends with Son, and it allows a significant portion of all holidays to be spent with Father.  Furthermore, the modified visitation failed to address how visitation during other holidays was to be divided between the parties.  Accordingly, the family court erred in modifying holiday visitation.  Holiday visitation shall revert to the visitation as specified in the original visitation agreement.  
 
III.  Contempt
Mother contends the family court erred in finding her in contempt for denying Father visitation.  We disagree.  
 
A finding of contempt rests within the sound discretion of the court.  Henderson v. Henderson, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989).  A trial courts determination regarding contempt is subject to reversal where it is based on findings that are without evidentiary support or where there has been an abuse of discretion.  Henderson v. Puckett, 316 S.C. 171, 173, 447 S.E.2d 871, 872 (Ct. App. 1994).  Even though a party is found to have violated a court order, the question of whether or not to impose sanctions remains a matter for the courts discretion.  Hawkins v. Mullins, 359 S.C. 497, 503, 597 S.E.2d 897, 900 (Ct. App. 2004).  An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support.  Townsend v. Townsend, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct. App. 2003).
The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings.  In re Brown, 333 S.C. 414, 420, 511 S.E.2d 351, 355 (1998).  Contempt results from a partys willful disobedience of a court order.  Smith v. Smith, 359 S.C. 393, 396, 597 S.E.2d 188, 189 (Ct. App. 2004); S.C. Code Ann. § 20-7-1350 (Supp. 2006) (An adult who wilfully violates, neglects, or refuses to obey or perform a lawful order of the court . . . may be proceeded against for contempt of court.).  A willful act is one which is done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.  Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001) (quoting Spartanburg County Dept of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 874 (1988)).  [B]efore a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct.  Widman, 348 S.C. at 119, 557 S.E.2d at 705.
In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondents noncompliance with the order.  Hawkins, 359 S.C. at 501, 597 S.E.2d at 899.  Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order.  Widman, 348 S.C. at 120, 557 S.E.2d at 705.  Furthermore, it is generally recognized that where a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt.  Hicks v. Hicks, 280 S.C. 378, 381, 312 S.E.2d 598, 599 (1984). 
 
The original visitation agreement stated that [Fathers] visitation will consist of every other weekend, from after school on Friday until Monday morning, when he will return [the child] directly to school.  The agreement further provided that:  In the event school is not in session, [Father] will pick up [the child] at the home at noon on Friday and will return him to his home on Monday at noon.  
 
Mother interpreted the language that Father would have Son from after school, to mean that Father should pick up Son from Mothers house and not pick up Son from school.  Thus, she believed that there was no interference with Fathers visitation the times she picked Son up from school and took him home, despite the fact that Father and Bobbie were there to pick him up for weekend visitation.  The family court noted that the parties prior visitation practice and the spirit of the original visitation agreement meant that Father would pick Son up at school for weekend visitation.  The court held Mother in contempt for interfering with Fathers visitation.   
 
Mother argues on appeal that the only way she could adequately supervise the pick-up of Son for visitation was to have the exchange at her home.  She now argues that the agreement does not allow pick-ups from school, and she has made Fathers attempt to pick the child up at school very difficult.  We find a clear reading of the agreement means that Father should pick-up Son at school on days when school is in session.  Otherwise, there would be no need for arrangements for when school is not in session.  Furthermore, since the inception of the agreement, pick-ups have been done at the school.  By preventing Father from doing so, Mother has interfered with Fathers visitation with Son.  Accordingly, the family court did not err in finding Mother in contempt for denying Father visitation.  
 
CONCLUSION
We affirm the family courts finding that Mother should not be awarded attorneys fees and costs.  We also affirm the family courts finding that Mother be held in contempt for interfering with Fathers visitation.  However, we reverse the family courts modifications of visitation concerning holiday visitation, and the original visitation agreement concerning holiday visitation shall be reinstated.  The modifications made concerning after school pick-up and mid-week visitation are affirmed.  For the reasons stated herein, the family courts decision is 
 
AFFIRMED IN PART AND REVERSED IN PART.  

HUFF, BEATTY, and WILLIAMS, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  Mother also contends the family court erred in denying her Motion to Reconsider and in denying her request for a hearing on the motion.  However, this argument is merely conclusory and deals only with the issue of modification of visitation.  Therefore, it will be treated as raising the same issues discussed in this section.